ALFREDO RUGGIERO *vs.* BROWN & SHARPE MANUFACTURING
COMPANY.

JUNE 29, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

BAKER, J.    This is a petition for review brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300, by an injured employee against his employer.    The director of labor granted the petitioner relief but the superior court, following a hearing on respondent's appeal, entered a decree denying and dismissing the petition.    From the entry of that decree the petitioner duly prosecuted to this court his appeal, which is now before us for determination.

In this proceeding the petitioner is apparently raising the fundamental issue of the extent of his capacity to work as a result of an injury to his back sustained in an accident on December 2, 1942. His contention is that by reason of his injury he is unable to work and that his earning capacity has decreased. On the other hand, the respondent maintains that the petitioner's earning capacity has not been lessened by his injury and that he is able to work as usual. In the decree entered in the superior court the trial justice made the following findings: "1. That the petitioner on September 20, 1943, was able to resume his usual work and was not incapacitated on said date. 2. That on September 20, 1943, the petitioner had an opportunity to resume his usual employment but declined to do so. 3. That in May, 1944, the respondent offered the petitioner a position which the petitioner had the physical capacity to perform and the petitioner declined to accept this position. 4. That the petitioner is now able to resume his usual work and is not incapacitated within the meaning of the Workmen's Compensation Act."

The petitioner argues that the findings of the trial justice are not supported by evidence and are based upon a misconception of the evidence, thus constituting errors of law which could be reviewed by this court and which would be sufficient to require that his appeal be sustained. The respondent, however, takes the position that there is legal evidence to support the findings of the trial justice, and that under established law such findings are therefore conclusive and cannot be disturbed by this court on appeal.

It appears from the evidence that the petitioner, who was about forty-seven years old at the time of the accident, suffered an injury arising out of and in the course of his employment by the respondent. He had been employed as a laborer in the latter's lumber yard since July 7, 1942. Part of his work consisted of the loading and unloading of lumber from trailers and in piling it in stacks. On December 2, 1942, while so employed, the petitioner slipped on ice and

fell backward, landing on some lumber and injuring his lower back. Thereafter the parties entered into a preliminary agreement providing for the payment of compensation to him. On March 1, 1943 he returned to his regular work but remained only until March 8, leaving at that time because he was still suffering from his back injury. However, on April 5 he again returned to work in the lumber yard, having in the meantime received payments of compensation under the preliminary agreement.

After April 5 he continued to work steadily at his usual occupation until September 4, 1943, performing the same duties as the other employees in the yard. During this period he received heat and diathermic treatments for his back, more or less regularly, at the respondent's dispensary. On the date last mentioned a good-sized beam fell and struck his right foot causing him to fall backward. On September 15, 1943 the parties entered into a preliminary agreement respecting the foot injury, and petitioner also agreed that he would resume work on September 20. He did not, however, return to work at all thereafter. In May 1944 the respondent offered him a position sweeping the floor in its plant, but the petitioner declined to accept this offer.

The evidence in this cause shows that there was no fracture or dislocation of the petitioner's vertebrae. They were in normal condition as appeared from X-ray photographs taken soon after the accident. There were no objective signs of injury to the back except a slight spasm of the lumbar muscles on the left side, probably from a bruise to the soft tissues of the lower back. There were no objective symptoms of a back sprain. However, slight pressure over the back caused the petitioner to complain of pain and discomfort even in September 1943. Most of petitioner's movements were normal, although the evidence is conflicting as to possible limitation of motion when he moved his body laterally to the left.

Two doctors testified on behalf of the petitioner. They were his own personal physician, who was first consulted

by him on September 28, 1943, after he had stopped work for the respondent, and Dr. Roland Hammond, who had been appointed, just prior to April 18, 1944, an impartial medical examiner by the department of labor. The petitioner's own doctor testified that at the time of the hearing he was still under the witness's care and that, in his opinion, petitioner could not do heavy work of any kind. Doctor Hammond testified in substance that on April 18, 1944 he examined the petitioner, who apparently was suffering some pain and who could not use his back normally. He also testified that in his opinion the petitioner needed medical attention and that he would be unable to work until he had been fitted with a certain brace for his back. There was evidence in the case showing that the petitioner had a belt for his back and used it up to September 4, 1943 while working for the respondent, and also that he was wearing it at the time of the hearing.

Two doctors testified on behalf of the respondent. They were a physician at its dispensary, who alone treated the petitioner from December 2, 1942 to September 24, 1943, and Dr. William A. Horan, an orthopedic specialist, who examined him on the date last mentioned. The respondent's physician testified in substance that in his opinion the petitioner, from April to September, 1943, was not incapacitated at all; that he actually did his usual work; and that he had the same capacity for work after the healing of the foot injury, which he suffered on September 4, 1943, as he had during the five months prior thereto. Doctor Horan testified that petitioner could bend and move his body in all directions without any discomfort or without any complaint of pain, excepting only when he moved it laterally to the left; and that he found no objective symptoms or cause for the latter complaint. He also testified as follows respecting the petitioner's ability to work as affected by his back injury: "Q. Now, having in mind the X-ray report and having in mind your examination, would you say that Mr. Ruggiero was incapacitated so he couldn't work on September

4th, 1943? A. No. Q. You wouldn't say that. Are you in position to give an opinion whether or not he could work on that date? I mean are you in a position to do this single examination and give the Court an opinion as to his capacity to work on that day? A. I felt that he could work, yes. Q. You felt that he could work. And would it make any difference to your opinion if you knew that his ordinary work was that of a laboring man required to do lifting, some heavy and some light? Would that change your opinion any? A. Not according to my examination."

On this state of the record we are unable to agree with the petitioner's contention that the findings of the trial justice are unsupported by any legal evidence. They are supported by the direct evidence of the physician at the respondent's dispensary and that of Dr. Horan, as above indicated. In addition there was the uncontradicted fact that he had worked several months after his accident at his regular position as laborer in the lumber yard.

As the trial justice pointed out, the test as to whether an injured employee is entitled to compensation depends upon whether or not he has suffered a loss of earning capacity. *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. After referring to the conflicting medical testimony the trial justice apparently deduced from the petitioner's conduct and the fact that he had actually worked steadily at his regular position for five months, that his back injury of December 2, 1942 had not lessened his earning capacity.

Finally, the petitioner himself, in his own testimony, gave the reason for his failure to return to work in September 1943, although he had signed an agreement stating that he would be able to resume work September 20, and also for his failure to accept the sweeping position offered to him by the respondent in May 1944. After stating that his physical condition was about the same after September 4, 1943, when he had the second accident, as it was before that date, the petitioner testified as follows respecting his failure to return to work or to get work: "Q. Isn't that the trouble

now, you are afraid to move your back, you are afraid you are going to be a cripple? A. Yes. Q. Yes. And that is the reason why you haven't made any attempt to get work, isn't that true? A. Yes." This was some legal evidence which the trial justice had a right to consider in passing upon the petitioner's capacity to work.

It is settled that, in the absence of fraud, if the findings of fact which the trial justice has embodied in his decree are supported by legal evidence they are conclusive and will not be disturbed by us. *Jillson* v. *Ross*, 38 R. I. 145, a case which has been repeatedly followed. See also the statute, G. L. 1938, chap. 300, art. III, §6.

The petitioner, in addition, argues that the trial justice misconceived the evidence because he ignored the fact that it was the injury of September 4, 1943 which was responsible for the petitioner's alleged incapacity to work. But apparently the cause was not tried and argued upon that theory. Whether or not the petitioner was entitled to have determined the question of any new injury or the aggravation of his previous back injury, because of the accident of September 4, 1943, is therefore not presented to us for decision in this cause. This the respondent expressly points out in its brief and, furthermore, neither the petition itself nor the evidence explicitly raised such questions for determination.

On the record, as viewed by us, we do not find that the trial justice has misconceived the evidence, and since there is legal evidence to support his findings as contained in the decree appealed from, such findings are, under the law, conclusive.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Benjamin Cianciarulo, Aram A. Arabian,* for petitioner.

*Sisson, Fletcher, Worrell & Hodge, Paul H. Hodge,* for respondent.