## John P. Egan *vs.* Walsh-Kaiser Company, Inc.

### JANUARY 21, 1948.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

CONDON, J. This is a petition for workmen's compensation. Petitioner alleged that he received certain injuries by reason of four separate accidents arising out of and in the course of his employment with the respondent. These accidents were alleged to have occurred on November 27, 1944, May 3, 1945, May 23, 1945, and June 17, 1945. However, petitioner did not file his petition for compensation in the office of the director of labor until February 4, 1946. After a hearing in the superior court on his appeal from the decision of the director, a decree was entered awarding him compensation from November 27, 1944 to December 17, 1944 for disability as a result of the accident of November 27, 1944; also from June 17, 1945 to September 2, 1945 for disability as a result of the accident of June 17, 1945.

From that decree petitioner has nevertheless filed an appeal to this court.

Petitioner has set out with much particularity nineteen separate reasons of appeal. Respondent contends that this is contrary to our settled equity practice and cites *Scott* v. *Smith*, 48 R. I. 66. That case merely holds that such particularization is not necessary. General reasons of appeal both as to law and fact are sufficient. *Vaill* v. *McPhail*, 34 R. I. 361. However, in his argument in this court petitioner has summarized his reasons of appeal under three points, only two of which he has briefed and argued, namely, that the superior court erred, first, in terminating compensation as of September 2, 1945; and, second, in refusing to admit testimony of the costs to petitioner for expert medical witnesses and in declining to exercise his discretion to allow or refuse such fees as costs in accordance with general laws 1938, chapter 300, article III, §6. Since the third point was neither briefed nor argued it is deemed to be waived. *Sullivan* v. *Caruso*, 68 R. I. 476.

The undisputed evidence shows that the petitioner was injured in each of the four accidents alleged in his petition, and that such accidents arose out of and in the course of his employment. The superior court so found. It did not, however, find that each accident resulted in petitioner's loss of earning capacity. As to the accidents of May 3, 1945 and May 23, 1945, the justice who decided the case expressly found that petitioner had not proved that the injuries resulting from each of those accidents were disabling. Petitioner argues that while such injuries were not disabling at the time of or immediately after each accident so as to result in any loss of earnings, he had nevertheless suffered some physical disability and such disability contributed to cause his accident of June 17, 1945, which accident resulted in his alleged present total disability. He further contends that the justice who decided the case overlooked or misconceived this phase of it and that he was, therefore, mistaken in finding, as appears

from his decision, that these accidents together with the accident of November 27, 1944 were disposed of in the hearing "by agreement of counsel that the employee was entitled to three weeks' compensation at the rate of $20.00 per week, a total of $60.00, for same."

We have carefully examined the transcript with special reference to the above contentions and we are of the opinion that there was evidence that the disabilities resulting from the accidents of May 3 and 23, 1945 did not contribute to cause the accident of June 17, 1945. Whether or not the trial justice misconceived the law which provides that an injured workman is entitled to compensation only when his disability results in his loss of earning capacity is not important in the circumstances here. The accidents in May admittedly did not result in any loss of earning capacity to the petitioner. He continued thereafter at his same employment without losing a day, and was without question fully able to do his work until the accident of June 17, 1945.

We are also of the opinion that there was evidence that the accident of November 27, 1944 did not contribute to the last accident in June 1945 and that petitioner had recovered from the injuries which he suffered therefrom. Doctor Walsh, who treated petitioner for those injuries, so testified. He also testified definitely that the petitioner was not disabled after December 16, 1944. The trial justice, therefore, did not err in finding that petitioner was entitled to $20 a week for three weeks as compensation for loss of earning capacity as a result of that accident. On our view of the evidence it is immaterial whether or not counsel for petitioner agreed that $60 was all the compensation petitioner was entitled to as a result of injuries sustained in the accident of November 27, 1944.

For the purpose of deciding this point we assume that while petitioner's counsel may have agreed that such amount was the correct compensation for the actual number of weeks petitioner was unable to work after Novem-

ber 27, 1944, he did not agree that petitioner's physical disability, aside from actual loss of earning capacity at that time, had ended. But even granting petitioner the benefit of such assumption we cannot say that there was no evidence before the trial justice to support his finding that petitioner had recovered from the disability which he sustained in the accident of November 27, 1944. That there was other evidence of a contrary nature is of no importance on review in this court, as in workmen's compensation cases we do not weigh the evidence. *Rosewater* v. *Jean's Inc.,* 72 R. I. 489.

The real difficulty here arises with regard to the accident of June 17, 1945. On that day while working in the plate shop of respondent's shipyard, on top of some plats or rails which stood about three feet from the ground and a short distance apart, petitioner was ordered by his foreman to walk over a plank which he had placed across two of the rails. In complying with that order petitioner fell between the rails as a result of one end of the plank giving way because it had not been securely placed. In falling petitioner was hit a severe blow in the left forehead by the other end of the plank. He was dazed by the blow, and after wandering around looking for the yard hospital he was finally guided there by another employee. He was then given first aid and put to bed. Later he was sent home in an ambulance. He was confined to his bed for ten days, and off and on for several weeks thereafter, in the care of his own physician, Dr. Israel Mandell.

Doctor Mandell diagnosed his injuries as concussion of the brain, left side, conjunctivitis of the left eye and back sprain. He testified that he treated petitioner from June 19, 1945 to September 2, 1945 and that the back trouble had cleared up after July 5, 1945. He continued to treat him for his other injuries, thought that petitioner still needed medical attention, and had not discharged him as his patient although petitioner had not called on him after September 2, 1945. However, petitioner testified that

during September and also during October 1945 he was treated for his eye condition by Dr. Hacking and Dr. Sharp, neither of whom testified. Doctor Sharp prescribed glasses for him, which he obtained at a cost of $19. Petitioner had no other medical treatment and it does not appear from Dr. Mandell's testimony that he was able to return to work on September 2, 1945.

Petitioner also testified that he received a letter from the respondent dated June 21, 1945 in which it was stated "that it has been found necessary to place your name on the inactive payroll because of injury." He has not since worked for anyone, and he further testified that he was unable to work; that his head has continued to ache, especially on the left side and when he stoops; that he has periods of dizziness; and that he continued to have headaches while being treated by Dr. Mandell, but stopped calling on him after September 2, 1945 because he did not think the doctor was curing him, although he admitted that his treatment may have helped him. Petitioner further testified that he tried to do small chores around the house but found that he could not as he got dizzy and lights came in front of him.

Petitioner's sister, Catherine Egan, with whom he lived, testified that he was always a steady worker until the accident of June 17, 1945; that now he is sleepy all the time, complains of headaches, gets irritated easily, and does not seem as bright as he used to be; that he is very forgetful, gets dizzy when he bends over, and is altogether a different person. She also testified that petitioner had not worked since the accident and appeared not to be able to do simple work around the house; that he had tried, but she had to do the work after him; and that at times he could not remember what he was told to do.

Doctor Harold W. Williams, a specialist in neuropsychiatry, examined petitioner on October 11, 1946 and testified that he was "suffering from a post-traumatic syndrome that has as its basis, a knocking out of nerve cells through

a great deal of the cortex of the brain." He further testified that such syndrome very definitely appears even in the absence of skull fracture or laceration of the brain, and he expressed the opinion, after making various tests, "that it would be very difficult" for the petitioner with his "emotional intellectual deterioration, to do a very good job of working with people in a group . . . ." He also testified that petitioner's present condition is "Due to dropping out of nerve cells through a wide area of his cortex, which in turn is brought about by head injury."

Doctor Arthur E. Martin, an orthopedist, examined petitioner on November 9, 1945 and testified in behalf of the respondent. After his examination he filed a report which, by agreement of the parties, is in evidence. He states therein: "This patient at the present time has no Orthopedic condition that requires treatment." He advised that the patient be referred to a neurosurgeon. He testified, on cross-examination concerning petitioner's complaints of pain in his left temporal region and across his forehead, that "I believe he was a neurological patient." He admitted that such complaints of pain could be due to being hit on the head with a plank as stated in petitioner's history of his accident, and that it could be due to a concussion. He also admitted that he recommended referral to a neurologist as there might be an injury to the brain.

Doctor Wilfred Pickles, a neurosurgeon, examined the petitioner on December 3, 1945 and testified in behalf of respondent. A written report of his examination of the petitioner, which has also been admitted in evidence, states: "I believe that this man suffered from a degree of congestion of the brain at the time of his original injury. At the present time there is no residual, organic evidence of brain damage. . . . If his symptoms persist I believe that he is entitled to the information which could be gained by a lumbar puncture, and that it might be wise to have an electroencephalogram done." He admitted it was possible that a later examination of the petitioner after December

3, 1945 might reveal brain damage, although he had not found any less than six months after the accident. He also admitted that there could be brain damage without evidence of bone damage.

Doctor Pickles further testified that if petitioner had suffered another accident to his head between the examination of December 3 and the later examination of another doctor it would be extremely difficult to say which caused the brain damage. It appeared that the petitioner had bumped his head against a door in his home sometime before his examination by Dr. Williams. In answer to a question by the trial justice based upon the evidence concerning petitioner's condition and as to what the witness would do if petitioner was his patient, Dr. Pickles said he would have him examined by a neurological consultant. In accordance with that opinion the trial justice decided to have petitioner examined by an impartial examiner, and he appointed Dr. William Newton Hughes, a neurologist, to make such an examination. His report was later filed in the superior court after the hearing in that court was concluded, but before a decision was rendered. Reference to that report will be made later in this opinion.

Doctor G. Edward Crane, an orthopedist, examined petitioner on November 21, 1945 and filed a report which he read into the evidence. He testified that petitioner's greatest complaints involved "symptoms of a post-concussion syndrome, with headache, dizziness and spots before his eyes." Orthopedically, the petitioner was not disabled, according to Dr. Crane. He suggested, however, that an examination of petitioner be made "by an internal medical man . . . ."

Doctor Louis A. Sage, another orthopedist, examined the petitioner on March 19, 1946 and also filed a report which is in evidence. He testified, from his report, that petitioner's greatest disability resulted from head injury but he did not feel competent to pass judgment upon that phase. Orthopedically considered, he felt petitioner was able to do light

work. He also testified that he was disabled by his head injury, but on cross-examination he qualified that opinion by saying that he left the matter of the effect of the head injury to the neurosurgeons and psychiatrists.

Doctor Hugh E. Kiene, a psychiatrist, examined petitioner on April 23, 1946 and his report by agreement was admitted in evidence. He did not testify. He reported that, in his opinion, petitioner's disability is permanent and complete and is causing mental deterioration which will become more and more incapacitating. He concluded that the accident of June 17, 1945 is only one of a series of incidents which caused petitioner's disability and is not thought to be *primary*.

After the hearing in the superior court was concluded Dr. Hughes, a neuropsychiatric specialist, examined the petitioner on November 20 and 23, 1946 and also considered, in accordance with the order of the superior court and the agreement of the parties, the reports of Doctors Martin, Crane, Pickles, Sage and Kiene, and also a transcript of the testimony of Doctors Mandell and Williams. He filed his report but neither party requested that he be called as a witness. After an exhaustive examination of the petitioner for three hours involving close professional observation of him, consideration of a complete history of his accidents and complaints, and subjecting him to various psychiatric tests, the doctor expressed the opinion that petitioner appeared honest and sincere; that he had no brain damage; that he had a variety of hysterical symptoms all associated with head injury; and that they all lead to "a certain diagnosis of traumatic neurosis of the hysterical type." The report further stated: "This man probably had a cerebral concussion resulting from his injury on June 17, 1945. He has entirely recovered from this condition, and exhibits no mental or neurologic evidence of this condition now. It is my opinion that he had recovered from his cerebral concussion when seen by Dr. Pickles on December 3, 1945. This man has a traumatic neurosis of

the hysterical type which resulted directly from his injury on June 17, 1945." The report concluded that petitioner had recovered sufficiently to do the work he had done prior to the accident, and that his symptoms, though uncomfortable, are not incapacitating and will probably disappear after brief psychotherapy treatments and a settlement of this litigation.

 After the hearing had been concluded in the superior court and before the record of the evidence was completed by the filing of Dr. Hughes' report, the justice who presided at the hearing retired, and rather than have the case retried the parties agreed to submit the case for decision by another justice of the superior court on the official transcript of the evidence and the written reports of the doctors who had examined the petitioner. It thus happens that we do not have the benefit of the judgment of the justice who saw and heard the witnesses. In the circumstances the justice who decided the case solely on the record did not have any advantage over this court in making his findings of fact. However, since this is a workmen's compensation case in which by force of the statute we are precluded from adjudicating the facts, this novel situation does not in any way alter the rule that the findings of fact by the superior court are, in the absence of fraud, conclusive. Unless the justice who decided the case on the record has misconceived the evidence and, therefore, committed error of law, his decision cannot be disturbed.

 After a careful examination of all the evidence we are of the opinion that he has misconceived or overlooked the fact that there is no evidence that petitioner was able to return to work on September 2, 1945. It is obvious from all the medical testimony that petitioner's head injury was the cause of his disablement. The nature of that injury is not clear. There is, however, a similarity in the opinions of Doctors Williams, Kiene and Hughes as to the fact of such injury although they differ as to its nature. Their opinions as to the extent of the duration of the dis-

abling effect of such head injury are in conflict. But there is evidence from Dr. Hughes, the impartial examiner, that, at the time of his examination on November 23, 1946, the petitioner had recovered sufficiently to do the work which he did prior to the accident, and therefore the trial justice's finding that petitioner is not now disabled cannot be disturbed.

However, his finding that petitioner's disability ended on September 2, 1945 is clearly erroneous, as there is no evidence to support it. He has misconceived the effect of petitioner's failure to continue his. treatments by Dr. Mandell after that date. That failure does not prove that petitioner was at that time no longer disabled. Indeed, Dr. Mandell testified, as we have previously observed, that he had not discharged the petitioner as his patient and that he still needed medical attention the last time he saw him. And, in any event, his head injury, which all medical witnesses who examined petitioner after September 2, 1945 deemed the most serious of his injuries, still persisted. The first definite testimony as to the termination of that injury so far as it was incapacitating petitioner for work is November 23, 1946, the date when Dr. Hughes found that such injury was no longer disabling. Therefore the decree is erroneous in fixing September 2, 1945 as the date of such termination instead of November 23, 1946.

 Petitioner's second point with reference to costs remains to be considered. The awarding of costs is exclusively within the province of the superior court. *Harding* v. *Imperial Printing & Finishing Co.*, 45 R. I. 416. In equity the prevailing party is not entitled to costs as a matter of right, as is the case at law; and workmen's compensation cases in this state follow the practice in equity. *Jules Desurmont Worsted Co.* v. *Julian*, 56 R. I. 97. However, a mere practice of the superior court not to award costs in such cases cannot have the force of law in view of G. L. 1938, chap. 300, art. III, §6, which provides: "The superior court may award as costs the actual expenditures, or such

part thereof as the court shall deem meet, but not including counsel fees, and shall include such costs in its decree. The superior court may refuse to award costs, and no costs shall be awarded against an infant or person under disability or against a guardian ad litem."

In the instant case the justice who presided at the hearing did not exercise his discretion and refuse to award to petitioner, as costs, his disbursements or expenditures for expert medical witnesses, but refused to allow evidence of such disbursements because, as he said, "I don't know of any precedents that would allow me to award, as costs, the expense of physicians testifying for either side." And he added, "I am going to rule against that, and I am basing it on the practice in the absence of decisions."

The narrow question which is thus raised for this court to decide is whether the justice of the superior court, in the event he exercises his discretion to award costs in a workmen's compensation case, may consider as part of such costs actual expenditures which the prevailing party has incurred for expert medical witnesses. Costs, technically considered, would not include such expenditures. But in view of the language of §6 above quoted, the comprehension of that term has been expressly broadened to include "actual expenditures, or such part thereof as the court shall deem meet"; and hence in workmen's compensation cases the superior court is not limited to "costs" as they are ordinarily understood.

We think that the legislature intended by §6 to vest in that court a broad discretion as to what should be included as costs in any given case. It was the duty of the trial justice to receive evidence of such actual expenditures and then to exercise his discretion as to whether he would allow them, or any part thereof, as costs. Since an offer of proof of such expenditures was made for the record, and since the superior court alone is vested with discretion to allow or refuse costs, subject only to review by this court for abuse of such discretion, the justice of the superior court

who decided the case should have an opportunity to exercise his discretion in this matter.

There is one final contention which petitioner makes concerning the superior court's refusal to award him reimbursement in the sum of $19 which he expended for eyeglasses. He argues that G. L. 1938, chap. 300, art. II, §5, as amended by public laws 1942, chap. 1226, expressly provides that the employer shall, if necessary, supply the employee with eyeglasses. That is true, but only "as may be reasonably required to cure and relieve from the effects of the injury . . . ." The justice who decided the case found that petitioner had not shown that such glasses were needed to cure any defect in his eyes caused by the accident. Unless there is no evidence to support that finding, it is conclusive. Our examination of the medical testimony and reports convinces us that there is such evidence. Petitioner undoubtedly needed glasses but he did not show that his defective vision was caused by the accident.

The petitioner's appeal is sustained, and the cause is remanded to the superior court with directions to determine whether petitioner should be allowed his expenditures for expert medical witnesses, or any part thereof, as costs, and to modify paragraph numbered 2 of the decree so that it shall provide compensation for the injury received by petitioner, as a result of the accident of June 17, 1945, from that date to and including November 23, 1946, at the rate of $20 a week.

*Ormond B. Cook*, for petitioner.

*Henry M. Boss, Francis W. Conlan*, for respondent.