ROBERT LAMBERT *vs.* FIRST NATIONAL STORES, INC.

MAY 16, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

366

FLYNN, C. J.  This employee's original petition for workmen's compensation and his subsequent motion seeking permission to have an operation for a lumbar disc performed at the expense of the respondent employer were heard separately and were granted by a single commissioner.  On appeals therefrom to the full commission, a decree was entered in each proceeding affirming the findings and decree of the single commissioner.  The case is before us on the employer's appeal from each of these decrees.

It appears that the petitioner in January 1953 while working with respondent's store manager was lifting cases of flour and experienced a sharp pain in his lower back.  He continued working and on July 22, 1953, while lifting a full case of soda from a conveyor to put it on the floor, he twisted his body and felt an acute pain in his lower back.  This pain, which caused him to sink to a sitting position without striking his back against any object, was severe and

extended across his lower back in the same area where he had suffered pain from the previous January incident.

While he continued to work thereafter, he sought and received medical attention, first from Dr. G. Hazard Rankin, a chiropractor. Later, at the suggestion of a representative of respondent's insurance carrier, he went to Dr. Henry B. Fletcher who treated him a number of times. Notwithstanding such treatments, he continued to suffer pain more or less during his work and it became acute whenever he attempted to lift anything. A year later in July 1954, while bending over and reaching into the trunk of his automobile at Olivo's Beach, he again felt severe pain in the area of his lower back, buttocks and legs. Thereafter he was unable to work for a week and he rested for the following week during his vacation.

Upon his return to work, to avoid lifting and acute pain he requested a lighter job as checker or cashier only. However, from time to time the respondent's manager would call on him to also assist in loading or stacking stock on one or two aisles. In November 1954, while lifting a cheese crate in the back room, he again hurt his back and was unable to work for three weeks. When, after returning to work, he continued to experience recurrent acute pain, especially when lifting even light objects, he consulted Dr. Donald F. Larkin, a surgeon, in May 1955. The latter prescribed conservative treatments, including a plaster body jacket or support for his back, which relieved the pain. However, the pain returned on July 2, 1955 while he was lifting a case of bread or bakery products on to a truck. Thereupon Dr. Larkin advised him to cease work and he was given additional treatment, including traction in a hospital for some fifteen or sixteen days.

Finally when the pain returned even after completion of traction and removal of the jacket, a myelogram was performed which disclosed a herniated intervertebral disc which would require surgery to correct. Following such

test, which definitely disclosed the cause of his pain, his doctor advised him that continued working would tend to aggravate the original injury and accordingly petitioner did no further work.

The first decree of the full commission affirmed the decree of the single commissioner finding that the herniated disc arose out of and in the course of petitioner's employment on July 22, 1953; that petitioner was totally disabled after July 10, 1955 as set forth in the decree; and that the employer or insurance company was obligated to pay petitioner's medical and hospital bills and a fee of $50 for his doctor's appearance at the trial as an expert witness.

In support of its appeal therefrom, the employer contends there is no legal evidence upon which to base the finding of fact that on July 22, 1953 petitioner sustained a herniated disc which arose out of and in the course of his employment and which was connected therewith and was referable thereto. It is further argued that the commissioner misconceived the testimony of Dr. Larkin; that the probative value thereof was destroyed by the doctor's testimony on cross-examination; and that in any event his evidence showed a mere possibility and not a probability of causal connection between petitioner's disability and the injury of July 22, 1953.

We have examined the transcript and are of the opinion that there was direct evidence in the testimony of Dr. Larkin to show a causal connection between petitioner's present incapacity and the injury of July 22, 1953. In our judgment the commissioner did not misconceive the evidence of Dr. Larkin as claimed by respondent. Nor does the doctor's testimony on cross-examination completely destroy his direct testimony so as to deprive it of probative force. See *Antonelli* v. *Walsh-Kaiser Co.*, 72 R. I. 1. On the contrary, if his testimony is read as a whole and not out of context, it is consistent with his declared opinion "that the incident of July 1953 was an onset of the present condition and that

the episodes which have transpired subsequent to that time have been aggravation of the original injury."

This conclusion is further confirmed in part by Dr. Fletcher's report, petitioner's exhibit 3, to the effect that on October 23, 1954 "patient's recurrence in July is definitely connected with his original back injury. He has a very vulnerable back which is subject from time to time to aggravation, primarily because of his rather frail stature and minimal musculature * * *." It is true that Dr. Fletcher re-examined petitioner on September 22, 1955 and reported, according to respondent's exhibit 4, as follows: "The establishment of direct causal relationship is not direct. Evaluation of patient's injury as of July 1954 should be further investigated." However, he also stated in that report: "In my opinion patient's complaints, findings and myelogram report are consistent. I do feel patient may well have an injury of the intervertebral disc at L-4. The question of treatment of this condition is not clear cut. * * * The prognosis is guarded." Certainly this whole report does not disprove the definitive diagnosis and positive opinion of Dr. Larkin, who concluded that petitioner "suffered a herniation to the soft structures surrounding that disk area in July of 1953." It actually confirms a portion thereof.

Another difficulty with the employer's contention concerning Dr. Larkin's testimony is that the questions on cross-examination were premised on a desire to have the doctor testify with "exact scientific certainty." Counsel for respondent now concedes that this is not the criterion of medical evidence. See *Emma* v. *A. D. Juilliard & Co.*, 75 R. I. 94, 99.

If Dr. Larkin's testimony is examined as a whole together with the reports of Dr. Fletcher, we are of the opinion that the petitioner's incapacity is connected causally to the injury on July 22, 1953, not as a merely possible but as a probable result thereof. Nor is it a new and separate in-

jury as was the case in *Macedo* v. *Atlantic Rayon Corp.,* 81 R. I. 339.

The respondent next contends that there is no legal evidence to support the finding that petitioner was totally disabled after July 10, 1955. It is argued that his absence from work resulted from mere "fear" of consequences and that this alone has been held to be insufficient as a basis for incapacity, citing *Ruggiero* v. *Brown & Sharpe Mfg. Co.,* 71 R. I. 178. This contention ignores the difference between the evidence in both cases. Here petitioner was experiencing acute pain when doing even lighter cashier work. After the myelogram disclosed definitely a herniated disc, he was advised by his doctor that rest from all kinds of lifting was advisable to prevent aggravation of his injury that would further complicate an operation. It may also be observed that respondent did not offer any light work which would be in keeping with the evidence concerning work that he might reasonably perform without potential aggravation of the injury.

The employer further argues that the commission erred in ordering reasonable medical expenses after finding that petitioner's attending physician had not given personal notice or reported to respondent as provided in the workmen's compensation act, general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297, art. II, sec. 5 (b). We think that contention is without merit. The doctor is not personally seeking payment directly from the respondent so as to come within the provisions of that section. Here it is the employee who is seeking allowances for medical and hospital expenses.

The respondent further contends that the commission was without jurisdiction to enter the final decree affirming the decree of October 11, 1955 ordering payment of a fee to petitioner's attending physician as an expert witness. We agree with this contention. Under the statute as amended there is no provision authorizing the allowance

of such a fee. Prior to the amendment the act permitted the superior court to "award as costs the actual expenditures, or such part thereof as the court shall deem meet * * * and shall include such costs in its decree." G. L. 1938, chap. 300, art. III, §6.

In *Egan* v. *Walsh-Kaiser Co.*, 73 R. I. 399, we held that costs technically considered would not include such expenditures, but that the particular language above quoted expressly broadened the meaning so as to include "actual expenditures, or such part thereof as the court shall deem meet * * *." However, in amending the act by the present statute, P. L. 1954, chap. 3297, art. III, sec. 5, the general assembly has omitted the express language upon which that decision was based. Without those words or their equivalent, there is no provision to authorize, as a part of the costs, payment of a fee for an expert witness. Consequently the ordering of payment thereof in paragraph 3 of the decree of October 11, 1955 was error.

The second decree of the full commission appealed from affirmed the decree of October 21, 1955 granting "Permission to perform the surgical operation in accordance with Sect. 5A, Art. II of Workmen's Compensation Act." The respondent contends that there is no legal evidence to support the findings in such decree. As previously indicated, when the evidence is considered as a whole, including the failure of conservative treatments to remedy the condition causing pain and incapacity and the definitive diagnosis and positive opinion by Dr. Larkin based in part on the myelogram test, we are of the opinion that there is a legal basis for the findings and decree of the full commission in granting the motion of the petitioner for permission to have such a surgical operation performed in accordance with the act.

The respondent's appeal from the final decree affirming the decree of October 21, 1955 is denied and dismissed, and the decree appealed from is affirmed. The respondent's

appeal from the final decree affirming the decree of October 11, 1955 is sustained in part as to the allowance of a witness fee in paragraph 3 thereof, otherwise it is affirmed, and the cause is remanded to the workmen's compensation commission for entry of a new decree in accordance with this opinion.

*Votolato & Connors, Arthur N. Votolato,* for petitioner.

*Boss & Conlan, John T. Keenan,* for respondent.