BROWN & SHARPE MANUFACTURING COMPANY *vs.*
GORDON L. DEAN.

MAY 21, 1959.

PRESENT: Roberts, Paolino and Powers, JJ.

110

PAOLINO, J. This is an employer's petition to review a preliminary agreement under the workmen's compensation act. The case is before us on the employee's appeal from a decree of the full commission affirming in part the decree of the trial commissioner.

We shall refer herein only to those portions of the record which are pertinent to the issues raised by this appeal. On February 26, 1954 the respondent sustained a compensable injury while employed by the petitioner. Thereafter, on June 25, 1954, the parties entered into a supplemental agreement which is presently under review. Such agreement provided for the payment of compensation to the respondent for partial incapacity "at varying rates per week based on the difference between an average weekly wage of $87.77 and the present varying weekly wage." These payments were to commence on June 28, 1954 and continue for the duration of partial incapacity.

The respondent was subsequently employed as a driver-salesman by W. C. Viall Dairy Inc. where he worked approximately 30 hours a week. He received as wages a base pay of $2 per day plus commissions. His weekly earnings were between $45 and $65. The petitioner paid respondent a weekly compensation computed on the basis of the

varying weekly earnings received by him from the Viall Dairy. However, on August 29, 1956 petitioner's insurance carrier notified respondent by mail that it had come into possession of a record of his earnings with another employer; that it had refigured the partial compensation due him on the basis of his earnings from both post-injury employers; that according to the computation it had overpaid him; and that it would deduct any future partial compensation which might be due from such outstanding overpayment until the amount overpaid had been adjusted.

It appears from the evidence that in July 1955, in addition to his employment at the dairy, respondent started to work for a second employer selling securities. He devoted about 30 hours a week to the second job, working afternoons, evenings and Saturdays. His earnings from such employment were on a strict commission basis. There is a conflict in the evidence as to when and how petitioner first learned of respondent's earnings from such additional employment. However, we do not deem such information material.

On October 5, 1956 petitioner filed the instant petition to review the June 25, 1954 agreement on the ground that respondent's incapacity had ended. At the same time it filed a notice that it intended to discontinue all payments to him on October 21, 1956 for the reason that he was able to return to the same work which he performed at the time of his injury. The respondent made timely objection, the petitioner was notified of the objection, and it was also notified by the commission that payments should be continued pending a hearing. It is undisputed that no payments were being made at the time the instant petition was filed and that petitioner did not make any payments thereafter up to the time of the hearing before the commission. On March 11, 1957 respondent filed a motion to adjudge petitioner in contempt on the ground that it had not made

weekly compensation payments to respondent in compliance with the provisions of the June 25, 1954 agreement.

Thereafter, commencing on March 14, 1957, the petition for review was heard on the merits before a trial commissioner. After such hearing he rendered a decision containing findings that petitioner was not in contempt; that on the date of the filing of the instant petition respondent was partially incapacitated as a result of the February 26, 1954 injury; that except for a brief period of total incapacity which is not pertinent herein, he has remained partially incapacitated as a result of such injury; and finally that he had an earning capacity.

On the basis of such findings the commissioner denied and dismissed the petition. He ordered petitioner to pay to respondent weekly compensation for partial incapacity equal to 60 per cent of the difference between $87.77 and the weekly wages, earnings, or salary which respondent had earned or in the future might earn for the duration of his partial incapacity, but not more than $18 per week. He also ordered petitioner to pay witness fees of $50 each to two doctors who had testified for the respondent at the hearing at his request.

In determining the amount of compensation due respondent, if any, by petitioner for the post-injury periods during which he worked for two employers, the commissioner held that the obligation of petitioner was to pay respondent a weekly compensation equal to 60 per cent of the difference between his average weekly earnings of $87.77 before the injury and the total of the combined weekly earnings from the two post-injury employers. In making such computation the commissioner allowed the deduction of certain expenses incurred by respondent in connection with his earnings from the second employer.

The commissioner had before him a record of the actual weekly earnings received by respondent from the Viall Dairy. But there was no evidence of the amount earned

by him weekly with the second employer. The only evidence relative to earnings received from the second employer was the record of the dates and amounts of certain payments of commissions. These records contained no information as to when the commissions were earned. In its brief petitioner concedes that such evidence reflects total earnings over irregular intervals of time and not weekly earnings.

It is true that there is in the record before us an exhibit marked "Commission Exhibit One" which purports to be a record of the actual weekly earnings received by respondent from the second employer. This exhibit was not in evidence at the hearing before the trial commissioner. It appears that, at the request of the commissioner, respondent's counsel obtained the exhibit from the second employer sometime after such hearing and mailed it to the commissioner after having had his exception to the use thereof noted on the record. However, we do not deem it necessary to determine whether the commissioner erred in such action since it is clear that he did not make use of the exhibit in computing the amount of respondent's weekly earnings from said employer.

The commissioner used the following formula in determining respondent's weekly earnings from the second employer for any given week. He totaled the sum of respondent's earnings over a 13-week period, deducted certain amounts allowed for expenses incurred by respondent in his work with said employer, and divided the total by 13 to get a weekly average for such period. He held that the average amount thus found was the weekly wage earned by respondent from the second employer for any given week. He then added said average amount to the weekly earnings actually paid to respondent by the Viall Dairy, subtracted the total from the average weekly wage of $87.77, and held that respondent was entitled to 60 per cent

of the difference for any given week, but not more than $18 per week.

However, petitioner was allowed credit for all compensation paid to respondent between September 1, 1955 and the date of the decree. The commissioner held that if the computation showed that there was compensation due respondent, such compensation should be paid forthwith. On the other hand, if the computation showed an overpayment by petitioner, he held that petitioner should be relieved of the payment of compensation until the amount overpaid was used up by applying the same to compensation coming due in the future. The commissioner ordered petitioner to prepare and attach to the decree a schedule of computation in conformity with his decision showing the amount of money, if any, due respondent under the June 25, 1954 agreement as of the date of the decree. Thereafter a decree based on the decision was entered by the commissioner.

The respondent appealed from said decree to the full commission. After a hearing thereon a final decree was entered by the commission affirming the decree of the trial commissioner in all respects excepting the provision therein ordering petitioner to pay witness fees to respondent's doctors. The allowance of such witness fees was omitted in the final decree of the full commission.

The respondent has filed ten reasons of appeal. However, he has briefed and argued these under four main points and petitioner has done likewise. The respondent contends that the commission erred in failing to adjudge petitioner in contempt; that it erred by including in its computation of respondent's post-injury earnings money received from the second employer; that it erred in computing such earnings on a 13-week basis; and finally that the full commission was without authority to overrule the trial commissioner with respect to the award of medical witness fees to respondent's doctors.

We shall first consider respondent's contention that the full commission was without authority to overrule the award of medical witness fees by the trial commissioner. The respondent concedes that under the act as amended the commission has no authority to award such fees to his doctors as expert witnesses. *Lambert* v. *First National Stores,* 85 R. I. 365, 131 A.2d 811. However, he contends that since petitioner did not appeal to the full commission, it cannot avail itself of respondent's appeal to correct the error. This contention is lacking in merit. The trial commissioner had no authority under the act to award such fees and consequently had no jurisdiction of the subject matter over which he purported to exercise his power.

It is well settled that a question of jurisdiction over the subject matter may be raised at any time by either party or by the court on its own motion. *Landry* v. *Cornell Construction Co.,* 87 R. I. 4, 137 A.2d 412, 414. The respondent cites *Blanchette* v. *R. I. Pastry Co.,* 87 R. I. 329, 140 A.2d 703, to support his instant contention. However, that case does not involve such a question and is not therefore applicable to the facts presently before us. In our opinion the full commission did not err in correcting the error of the trial commissioner with respect to said witness fees.

Under the second point respondent contends that the commission was in error when it included in its computation of respondent's post-injury earnings, moneys received from the second employer. He argues in substance that since the average weekly wage earned by an employee before an injury is based on 40 hours, the post-injury earnings should also be based on 40 hours. In other words, respondent claims that the same basis should be used in determining an employee's post-injury earnings as is employed in determining his average weekly earnings before a compensable injury is sustained.

116

It is well established in this state that compensation is paid only for incapacity resulting in loss of earnings. *Trotta* v. *Brown & Sharpe Mfg. Co.*, 86 R. I. 247, 134 A.2d 173. Under the act governing the instant case, the legislature provided: "While the incapacity for work resulting from the injury is partial the employer shall pay the injured employee a weekly compensation equal to 60% of the difference between his average weekly wages, earnings, or salary, before the injury and the weekly wages, earnings or salary which he earns thereafter, but not more than $18.00 a week * * *." General laws 1938, chapter 300, article II, §11, as amended by public laws 1950, chap. 2628.

The phrase "average weekly wages, earnings, or salary" is defined in the act to mean "the average weekly wage earned by the employee at the time of the injury, reckoning wages as earned while working full time." The act further provides in the same section that " 'Full time' shall mean not less than forty (40) times the hourly rate of wages or earnings." G. L. 1956, §28-33-20. The language therein is clear and unambiguous. It clearly relates only to the employee's "average weekly wages, earnings, or salary, before the injury" as the latter language is used in P. L. 1950, chap. 2628, and merely provides that average weekly wages before the injury are based on "Full time" and that "Full time" means "not less than forty (40) times the hourly rate of wages or earnings."

However, with respect to post-injury earnings which are to be used in computing the amount of compensation to be paid to a partially incapacitated employee, the legislature has not defined, limited or restricted the meaning of the phrase "the weekly wages, earnings, or salary" earned by a partially incapacitated employee in post-injury employment as that phrase appears in P. L. 1950, chap. 2628. The language used is clear and unambiguous. In such circumstances it is well established that if the language of a statute is free from ambiguity and expresses a definite and

sensible meaning, that meaning is conclusively presumed to be the one which the legislature intended. In such cases the statute must be interpreted literally. We cannot change the clear meaning of such language. *Blais* v. *Franklin*, 31 R. I. 95; *Allen* v. *Rhode Island State Board of Veterinarians*, 72 R. I. 372; *Weimar* v. *Newman*, 78 R. I. 221.

In the instant case there is no room for a construction different from that which is clearly indicated by the ordinary meaning of the words "weekly wages, earnings or salary which he earns thereafter * * *." In our opinion such language means that *all* earnings for services performed weekly in post-injury employment by a partially incapacitated employee must be computed in determining the amount of compensation payable to such employee weekly. If this result appears harsh, relief must be sought in the legislature. As was said in *George A. Fuller Co.* v. *Schacke*, 71 R. I. 322, at page 326: "We conceive it our duty to give meaning to the words of the statute and to leave to the legislature further liberalization which is beyond the reasonable limits of judicial construction."

Public laws 1950, chap. 2628, provides for the payment of weekly compensation for partial incapacity on the basis of a statutory formula which equates the amount payable to a sum equal to 60 per cent of the difference between the "average weekly" earnings before the injury and the *actual* weekly earnings thereafter. In our opinion the commission erred in determining the respondent's post-injury weekly earnings by computing the average paid him by one employer over a 13-week period and adding the average so found to the amounts actually paid to him weekly by the other employer. We find no authority in the act for such action. As we have already indicated, the act provides that the employer shall pay the partially incapacitated employee a weekly compensation equal to 60 per cent of the difference between his average weekly earnings

before the injury and his *actual weekly* earnings from post-injury employment.

The decree denying and dismissing the petition for review is based on the commission's finding that the respondent's incapacity had not ended. Such finding is supported by the testimony of medical experts and is therefore binding upon this court. However, the denial and dismissal of such petition left the preliminary agreement of June 25, 1954 in full force and effect and the petitioner remained obligated to comply with the terms thereof. The question remains whether there has been such compliance. In our opinion the commission was not in a position to decide this issue on the record before it because of the absence of evidence of the actual weekly earnings of the respondent from the second employer. In any event, even if we assume that such evidence was in the record, the commission did not base its decree on such evidence, but rather on a formula which, as we have already indicated, it had no authority under the act to adopt.

Although we cannot say on the record before us that the respondent's motion to adjudge the petitioner in contempt should have been granted, we are of the opinion that the commission's finding that the petitioner was not in contempt was error. However, we are of the further opinion that justice requires that the case be remanded to the workmen's compensation commission for further hearing on the respondent's motion to adjudge the petitioner in contempt in order to afford the parties an opportunity to present evidence on the question of the respondent's actual weekly earnings from the second employer, so that the commission may make a finding thereon in accordance with this opinion, and thereafter determine the amount of weekly compensation to which the respondent was entitled under the preliminary agreement of June 25, 1954. The commission will then be in a position to decide whether there has been compliance with such preliminary agreement and also

whether the petitioner is in contempt as charged by the respondent.

The respondent's appeal is sustained in part, the decree appealed from is reversed as above indicated, otherwise it is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings in accordance with this opinion.

*Worrell & Hodge, Lee A. Worrell,* for petitioner.

*Joseph A. Kelly,* for respondent.