J. Joseph Nugent, *Attorney General, ex rel.* Michael J. Manning *vs.* August P. LaFrance, *Secretary of State.*

OCTOBER 6, 1960.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Paolino, J.   This is a petition for a writ of mandamus praying that the respondent, in preparing the ballots to be used at the primary on September 28, 1960, be ordered to arrange the names of certain candidates for the third ward Democratic Committee in the city of Cranston on ballot labels according to the statute.

The petition was filed on September 16, 1960 and was considered by the court on the same day. After consideration the court was of the opinion that the questions raised involved and affected the application of the general election laws throughout the state and that consequently the public interest required a hearing and determination. For these reasons petitioner was granted leave to file the petition and, because of the urgency of a prompt decision, the writ was made returnable on September 21, 1960.

At the hearing respondent was represented by the attorney general who filed a written statement setting forth that although he had not consented to the use of his name in his capacity as attorney general, because of the public interest involved he had no objection to the use of the title "State of Rhode Island" in said petition. The petition would therefore be more properly entitled "State of Rhode Island, ex rel. Michael J. Manning v. August P. LaFrance, Secretary of State." The petitioner was represented by private counsel. In the circumstances the instant petition is not controlled by *Nugent ex rel. Collins* v. *Vallone,* 91 R. I. 145, 161 A.2d 802.

After hearing arguments of counsel and of amici curiae, and after careful consideration, a majority of the court was of the opinion that petitioner was entitled to the relief prayed for. Since the primary was only days away and time did not permit the filing of a written opinion, the court rendered a bench decision granting the petition as amended and ordering the writ to issue in accordance with petitioner's amended prayer, stating that an opinion containing the reasons for its decision would follow at a later date.

Pursuant to such decision we shall discuss the pertinent allegations and the applicable statute. The petition alleges that the Democratic Committee in Cranston has endorsed nine candidates for election to the ward committee in question at the party primary on September 28, 1960; that petitioner and eight other candidates have received such en-

dorsement; and that by virtue of such endorsement he is entitled to have his name printed in the first column at the right of the title of the office he seeks and marked with an asterisk.

The petition further alleges that seventeen other persons have qualified as unendorsed candidates for election to said ward committee; that respondent is required under the provisions of general laws 1956, §§17-19-5 and 6, as amended, to arrange the ballot labels in accordance with the requirements of §17-15-8, as amended; that said §17-15-8 requires respondent to print petitioner's name in the first column horizontally opposite and to the right of the title of the office which he seeks marked with an asterisk, and the names of the unendorsed candidates horizontally and alphabetically opposite and to the right thereof across the ballot; and that said statute requires that if there are more candidates for a particular office than the ballot can accommodate in said horizontal column, the names be continued in alphabetical order succeeding the last name at the extreme right of such column to the next horizontal column beneath such column.

Finally petitioner alleges that respondent intends to arrange the names of said unendorsed candidates vertically and alphabetically in the second and third columns in violation of and contrary to the requirements of the provisions of said statute.

The only question before us is one of legislative intent. To find the legislative intent we must look at the language of the statute and examine its legislative history. Prior to May 17, 1960, §17-15-8 merely provided that names of party candidates for a particular office should be printed *alphabetically opposite and to the right* of the names of the office they sought, with the proviso that the names of the endorsed candidates should be printed in the first column at the right of the title of the offices they sought marked with an asterisk. Sometime in the latter part of 1958 the

superior court for the county of Providence decided a case involving unendorsed town committee candidates and held that horizontal listing of such unendorsed candidates was in violation of §17-15-8 as it then read.

Thereafter, at the January 1960 session of the general assembly, the legislature amended said section, effective May 17, 1960, by inserting before the word "alphabetically" the words "horizontally and" and also by adding a second proviso which stated that if there were more candidates for a particular office than the voting machines could accommodate in such horizontal column, the names should be continued in alphabetical order succeeding the last name at the extreme right of such column to the next horizontal column *beneath* such column.

Section 17-15-8, as amended, reads as follows:

"Listing of candidates on ballots and ballot labels.— The secretary of state shall forthwith upon receipt of the certificates provided for by chapter 14 of this title cause the proper ballots or ballot labels to be prepared for use in the various voting districts. Names of party candidates for a particular office shall be printed horizontally and alphabetically opposite and to the right of the names of the office they seek and shall not appear on the ballot more than once for the same office; provided, however, the names of candidates having the endorsement of their party committees shall be printed in the first column at the right of the title of the offices they seek and shall be marked with an asterisk (*); provided, further, however, that in the event that there be more candidates for a particular office than the voting machine can accommodate in such horizontal column, the names shall be continued in alphabetical order succeeding the last name at the extreme right of such column to the next horizontal column beneath such column."

What did the legislature intend to accomplish by inserting the word "horizontal" and by adding the second proviso? Did it intend to amend the statute to conform with the decision of the superior court to which we have referred,

or did it intend to do exactly the opposite by the addition of descriptive language indicating its intention that the names of unendorsed candidates for any office or offices were to be printed horizontally across the ballot and not in vertical columns? What meaning is to be given, if not their ordinary meaning, to the clearly descriptive and unambiguous words "horizontal" and "beneath"?

In view of the legislative history of §17-15-8, it is reasonable to assume that in amending said statute the legislature had in mind a situation similar to that in the instant case, namely, a contest for election to a party committee. If the legislature intended to require vertical listing of unendorsed candidates for such offices, it is unreasonable to assume that it would use the word "horizontal" which clearly means the opposite of the word "vertical." On the contrary it is more reasonable to assume that if the legislature intended in such cases to require vertical listing in perpendicular columns it would have so provided by the use of appropriate language. This conclusion is supported by the fact that the legislature made no distinction between candidates for a single office and candidates for a party committee.

In our opinion the language and legislative history of the statute clearly indicates a legislative intent that the names of unendorsed candidates be arranged horizontally and alphabetically across the face of the ballot. The wording of the statute is clear and unambiguous and consequently leaves no room for judicial construction. It is well established that if the language of a statute is free from ambiguity and expresses a definite and sensible meaning, that meaning is conclusively presumed to be the one which the legislature intended. In such cases the statute must be interpreted literally. We cannot change the clear meaning of such language. *Brown & Sharpe Mfg. Co.* v. *Dean*, 89 R. I. 108, 116, 151 A.2d 354, 358; *State* v. *Duggan*, 15 R. I. 403, 409.

We come now to the question whether the provisions of

the statute are mandatory or merely directory. In our opinion the statute is clearly mandatory. See 29 C.J.S. Elections § 158. There is nothing in the language of the statute from which it can reasonably be inferred that the secretary of state was vested with any discretion in the arrangement of such names. The statute not only imposes upon him the duty of preparing the proper ballots or ballot labels for use in the various voting districts, but it clearly and expressly sets out the manner in which he must arrange the names of party candidates on such ballots. The respondent was duty bound to print such names in accordance with the petitioner's amended prayer. The petitioner was therefore entitled to the writ.

Inasmuch as this petition has been disposed of by our decision heretofore filed, no further order is now required.

CONDON, C. J., dissenting. In the circumstances and in view of the fact that mandamus is discretionary, I would not issue the writ. Solely for such reason, therefore, I dissent.

*Michael DeCiantis, Charles A. Kelley,* for relator.

*J. Joseph Nugent,* Atty. Gen., for respondent.

*Gunning & LaFazia, Raymond A. LaFazia, Edward L. Gnys, Jr.,* for Cecile Gray et al. as amici curiae.