**251 A.2d 165.**

LUCY CATUTO *vs.* MONOCRAFT PRODUCTS COMPANY.

MARCH 14, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This original petition by an employee for compensation benefits is before us on the employee's appeal from a decree of the full commission affirming a decree of the trial commissioner which, after allowing credit for amounts previously paid pursuant to a non-prejudicial agreement, ordered the respondent to pay compensation for total incapacity for work for the periods hereinafter specified. In addition the respondent was directed to pay for reasonable medical and related services, fees for the testimony of an expert witness, and counsel fees for petitioner's attorney.

The commission's factual determinations are not in issue. It found that on August 26, 1965, petitioner sustained a compensable injury to her back which totally incapacitated her from gainful employment for the following periods:

September 7, 1965 to October 10, 1965;
December 28, 1965 to March 13, 1966;
April 21, 1966 and April 22, 1966;
August 16, 1966 to November 10, 1966.

In the intervals between the foregoing periods, as well as since November 10, 1966, petitioner, even though then, as well as now, suffering from the residual effects of the original incapacitating injury and unable to do the same kind of work which she had done prior to her injury, was employed, but at lighter work. Until March 1967 that re-employment was with respondent. Thereafter she worked for two other employers. She has been out of work since January 13, 1968, when she was laid off, not because of any physical disability, but solely because of economic conditions.

The initial question is whether she is entitled to any weekly compensation benefits for the period of unemployment following her lay-off in January 1968. On that issue

the law is settled. Since *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309, 95 A. 603, was decided in 1915 shortly after the enactment of our compensation act, our rule has been that compensation is awarded, not for disability as such, but for an impairment of earning capacity caused by or resulting from that disability. Time and again we have said that the act is intended to furnish compensation for a loss of earning capacity, and that without such loss, even though there may be a permanent physical disability, there can be no compensation. That principle has been applied to numerous fact situations, some of which, like those in *Nunes* v. *Davol Rubber Co.*, 87 R. I. 271, 140 A.2d 272, and *Gray* v. *Kagan*, 90 R. I. 398, 158 A.2d 572, closely parallel the facts of this case. In both *Nunes* and *Gray* a worker, although suffering from the residuals of a compensable injury, resumed employment and earned wages equal to or greater than the average weekly wages he had been earning when injured. When, thereafter, his employment was terminated solely by reason of lack of available work, rather than because of a lingering disability, compensation was denied because the claimant, even though out of work and still partially disabled, nonetheless had a post-injury physical capability of earning wages equal to or in excess of his pre-injury average weekly earnings. He had not, therefore, suffered any impairment of his earning capacity and, even though partially disabled as a result of the work-connected injury, was not incapacitated for compensation purposes. The petitioner in this case, just like the workers in *Nunes* and *Gray*, may still have residuals of the original incapacitating injury to her back, but under *Weber*, loss of earning capacity, rather than the residuals of her disabling compensable injury, is the criterion for awarding compensation benefits. Under that standard, petitioner, whose unemployment and resultant lack of earnings is in no way traceable to her continuing physical disability, is

not entitled to weekly benefits so long as she has demonstrated a post-injury capability of earning wages equal to or greater than her pre-injury earnings.

In addition to claiming weekly benefits for the period of her unemployment, petitioner claims that she should receive partial incapacity benefits for those weeks of her post-injury employment when her actual earnings were less than her pre-injury average weekly wages. Ordinarily, such a difference between before and after earnings would establish entitlement to benefits, and petitioner would succeed here had she shown that the discrepancy in earnings in the two periods was attributable to the effect of her injury upon the number of hours she could work or the rate of pay she could earn. This, however, is not the case, because the evidence here is that if work had been available, she could have worked as many hours as she had before her injury. Her hourly rate of pay, moreover, had not changed, even though there had been a change in the kind of work she was able to do. Her claim for partial incapacity benefits, then, stands in the same light as does her claim for total incapacity. Each rests upon the faulty assumption that considerations other than a capacity to earn enter into the calculation of post-injury earnings. *Weber, supra,* however, says that capacity to earn is all important, and that so long as a claimant's post-injury earnings potential is equal to his pre-injury average earnings, he is not entitled to partial incapacity benefits, even though following his injury he in fact earned less than before he sustained his disability.

Implicit in what we have said is the existence of a legislative directive that earnings attributable to hours worked in excess of the normal work week should be included in the calculation of the pre and post-injury wage bases. We applied that directive as to the pre-injury calculation in *Shortall* v. *Brown & Sharpe Mfg. Co.,* 74 R. I. 237, 60 A.2d

143, and as to the post-injury computation in *Brown & Sharpe Mfg. Co.* v. *Dean,* 89 R. I. 108, 151 A.2d 354. *Shortall,* however, was decided when the controlling statute read differently from what it does today. Notwithstanding the change, the legislative intention remains the same. Today that statute (G. L. 1956, §28-33-20) provides in material part that

> "(a) 'Average weekly wages, earnings or salary,' shall mean the average weekly wage earned by the employee at the time of the injury, reckoning wages as earned while working full time. 'Full time' shall mean *not less than* forty (40) times the hourly rate of wages or earnings." (italics ours)

Primarily, of course, the legislature in this enactment was concerned with the computation of the earnings of an employee working less than 40 hours a week, and as to him it prescribed a mathematical formula. His hourly pay rate shall be multiplied by 40. *McCrudden* v. *Venditto Bros.* 103 R. I. 201, 235 A.2d 878. While the language is not as explicit as it might be with respect to an employee who works in excess of 40 hours, the definition of "full time" as *"not less than* forty (40) times the hourly rate" is significant. (italics ours). If the legislature had intended to exclude overtime earnings it would not have used the italicized words *"not less than,"* and its definition would have read " 'Full time' shall mean forty (40) times the hourly rate." The inclusion of the words *"not less than"* satisfies us that the legislature intended that overtime pay would be included in the computation of the pre-injury average weekly earnings.

The petitioner's appeal is denied and dismissed, and the decree appealed from is affirmed.

*John Quattrocchi, Jr.,* for petitioner.

*Carroll, Kelly & Murphy, Joseph A. Kelly,* for respondent.