393 A.2d 1088.

EDWARD J. GOMES, JR. *v.* RHODE ISLAND STATE
BOARD OF ELECTIONS *et al.*

OCTOBER 25, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

KELLEHER, J.   This is common law certiorari to review a decision of the Rhode Island State Board of Elections affirming a decision of the city of Cranston's Board of Canvassers. The Board of Canvassers had held that Arthur Viola was to be the endorsed candidate for the Democratic Party's nomination for the office of councilman from the city's Third Ward in the primary election of September 12, 1978. The respondents in this preceeding include the State Board of Elections (the board), the city of Cranston's Board of Canvassers (the canvassers), and Robert F. Burns in his capacity as Secretary of State of the State of Rhode Island.

The relevant facts in this case are uncontradicted. On June 1, 1978, Edward J. Gomes, Jr. (Gomes), filed his declaration of candidacy for the Democratic nomination for city councilman in Cranston's Third Ward. Joining Gomes in the contest for his party's nomination for that office were Arthur Viola (Viola) and Edward DiMuccio (DiMuccio). The Third Ward Democratic Committee (the ward committee), empowered by G.L. 1956 (1969 reenactment) §17-12-11[1] to endorse those candidates of its choice seeking elective office within the ward, fulfilled its statutory function on June 14, 1978, by submitting a list of endorsed candidates to the canvassers. That list included the name of DiMuccio as the ward committee's endorsed candidate for the office of councilman.

---

[1]General Laws 1956 (1969 Reenactment) §17-12-11 reads, in pertinent part, as follows:

> "Endorsement by local committees. — Each town, ward and city committee shall file with the appropriate local board the list of candidates in such town, ward or city which have the endorsement of the committees.
>
> \* \* \*
>
> "Such endorsement shall be filed with the appropriate local board or the secretary of state, as the case may be, not later than 5 p.m. of the second day after the last day for filing declarations of candidacy."

The selection of DiMuccio meant that Gomes and Viola were to appear on the primary ballot as unendorsed candidates for that same office. On June 20, 1978, several days after the expiration of the time allowed by §17-12-11 for filing endorsements,[2] DiMuccio withdrew as a candidate for his party's nomination pursuant to the provisions of §17-14-15.[3] Thus left without an endorsed candidate for the office of councilman, the ward committee sought to fill the void. On June 26, 1978, it voted unanimously to endorse Viola as its candidate and sent notice of this endorsement to the canvassers. Gomes challenged the authority of the canvassers to accept and certify an endorsement filed after the deadline imposed by §17-12-11, and, on June 30, 1978, the canvassers held a hearing to consider the propriety of their accepting the endorsement. The canvassers accepted and certified the endorsement. On July 3, 1978, Gomes appealed that decision to the board pursuant to §17-7-5(d).[4] The board held its hearing and on July 14, 1978, sustained the decision of the canvassers.

---

[2] *See* note 1, *supra.* The reference in §17-12-11 to "the last day for filing declarations of candidacy" is a reference to G.L. 1956 (1969 Reenactment) §17-14-1, as amended by P.L. 1978, ch. 271, §1, which specifies that declarations of candidacy are to be filed in cases such as this one "[d]uring the first ten (10) days in June."

[3] General Laws 1956 (1969 Reenactment) §17-14-15 reads, in pertinent part, as follows:

> "Withdrawal of candidacy. — A person nominated as a candidate to be voted for at any such primary may withdraw his name from such nomination prior to said primary by a request signed and duly acknowledged by him setting forth the reason for the withdrawal, that the same is the candidate's own free act and deed, and that the same is not executed as the result of any threat or promise made to the said candidate. Such certificate of withdrawal shall be filed in the office where the nomination papers were filed [before the close of regular business hours on the next business day after the last day fixed for filing nomination papers, which in turn is 60 days before the date of the primary]."

*See also id.* §§17-14-13, -12, as amended by P.L. 1978, ch. 271, §1.

[4] General Laws 1956 (1969 Reenactment) §17-7-5(d) reads as follows:

> "The state board shall also have jurisdiction over all election matters on appeal from the local board and over such other matters pertinent and necessary to the proper supervision of the election laws."

Thereafter, Gomes petitioned us for a writ of certiorari. Because the facts in this case are not in dispute, we did not order the issuance of the writ that would ordinarily have led to the production of the pertinent records. The urgent need to ensure complete certainty as to all matters concerning the primary-day ballot caused us to expedite consideration of this case. Consequently, on July 28, 1978, we issued an order that granted the petition and quashed the decision of the board. The canvassers were permanently restrained from certifying Viola's name to the Secretary of State as the endorsed Democratic candidate for city councilman in the Third Ward, and the Secretary of State was directed to prepare a primary-election ballot reflecting our holding that there was in fact no endorsed candidate for the Democratic nomination. *Gomes v. Rhode Island State Board of Elections,* 120 R.I. 998, 388 A.2d 1388 (1978).[5] We now set forth the reasons for that holding.

The sole issue presented to us by Gome's petition is whether the board correctly determined that the ward committee could lawfully submit a supplementary endorsement for the office of councilman when that second endorsement was neither filed within the period prescribed by §17-12-11 nor otherwise provided for by law. Viola and the canvassers argue that §17-12-11 grants to the ward committee a broad power to endorse candidates for party nomination. Each then concludes that this power — according to reason and the will of the Legislature — must continue beyond the time prescribed by statute when a previously endorsed candidate withdraws; that is, when an earlier,

---

[5]Gomes argues that G.L. 1956 (1969 Reenactment) §17-15-8 gives a preferred ballot position to the endorsed candidate. He points out that under this section the Secretary of State is required to prepare a ballot in which the names of the endorsed candidates are printed in the first column at the right of the title of the offices they seek, while the names of unendorsed candidates are to be printed horizontally and alphabetically opposite and to the right of the office they seek. While there may be some others who adhere to the belief expressed by Gomes, we make no judgment in this regard.

proper exercise of power proves futile.[6] To conclude otherwise, argue the canvassers, would be to "disenfranchise" the ward committee.

We believe that Viola and the canvassers have misconceived the scope of the problem presented. In this case we need not search the election laws for possible inferences to support the existence of the power claimed by respondents. The problem is far simpler and requires only that one recognize certain well-settled principles and then look to the language of the statute itself. At the outset we observe that the Rhode Island Constitution vests in the General Assembly exclusive authority over state and local elections and the manner of conducting those elections. *E.g., Malinou* v. *Board of Elections,* 108 R.I. 20, 26, 271 A.2d 798, 801 (1970), *citing Bilodeau* v. *Dolan,* 85 R.I. 348, 354, 131 A.2d 686, 689 (1957). As we have stated and reaffirmed in the past:

> "It is within the prerogatives of the legislature to provide for the recognition of political parties, define membership therein, and by appropriate measures secure stability for the political system it creates." *Parise* v. *Board of Canvassers & Registration,* 92 R.I. 493, 497, 170 A.2d 292, 294 (1961).

*See also Malinou* v. *Board of Elections,* 108 R.I. at 26, 271 A.2d at 801.

---

[6]The canvassers do not specify when the supposed power to file this *second* endorsement would expire and indeed appear to argue that no time limit whatsoever is applicable after the ward committee has once properly complied with the provisions of §17-12-11. Viola, on the other hand, recognizes that such a power, even if found to exist beyond the time provided in §17-12-11, could not reasonably be deemed to endure until primary day itself. Rather, he argues that the Legislature intended the was committee to possess its power of endorsement throughout "the statutory time limit; namely within the time provided for issuance of new nomination papers, procurement of sufficient signatures and certification." We assume that Viola's argument is intended to direct us to the timetable established in G.L. 1956 (1969 Reenactment) §17-14-11, as amended by P.L. 1978, ch. 271, §1, which requires that nomination papers be submitted to the local boards on or before the 70th day before the primary.

When the Legislature exercised its prerogative in the area of committee endorsements, it enacted §17-12-11, which in clear and unequivocal language prescribes the precise time and manner in which a ward committee must file its list of endorsed candidates. Where the language of a statute is free of ambiguity and conveys a definite and sensible meaning that does not contradict an evident legislative purpose, there is nothing to construe. *Berberian* v. *Town of Westerly,* 119 R.I. 593, 597, 381 A.2d 1039, 1042 (1978). *See also McCormick* v. *State Board of Elections,* 119 R.I. 384, 387, 378 A.2d 1061, 1063 (1977); *Nugent ex rel. Manning* v. *LaFrance,* 91 R.I. 398, 402, 164 A.2d 230, 232 (1960), *citing Brown & Sharpe Manufacturing Co.* v. *Dean,* 89 R.I. 108, 116-17, 151 A.2d 354, 358 (1959); *State* v. *Duggan,* 15 R.I. 403, 409, 6 A. 787, 788 (1886). We must give a literal effect to §17-12-11.

Undoubtedly, the patent purpose of §17-12-11 is to ensure the orderly functioning of the primary-election timetable so that those responsible will have sufficient time to prepare that ballot properly. Although the Legislature, by its enactment of §17-14-15, has provided a method by which the endorsed candidate may withdraw from consideration in the primary, it obviously did not provide a means by which an endorsing authority, once its candidate withdraws and the time limitation set forth in §17-12-11 has expired, can endorse a second candidate. We have no idea whether this omission was inadvertent rather than intentional but, for whatever reason, the Legislature has failed to provide for the contingency encountered by the ward committee.

At oral arugment the suggestion was made that we indulge in a bit of interstitial judicial lawmaking and fill the so-called endorsement gap. Our legislating between the gaps has been reserved for instances in which the legislative intent is cloaked in obscurity. *Town of North Kingstown* v. *North Kingstown Teachers Association,* 110 R.I. 698, 706, 297 A.2d 342, 346 (1972). Here, we fail to see the obscurity.

In making this observation, we would point to *Boucher* v. *Mailloux*, 61 R.I. 510, 2 A.2d 63 (1938), as a good example of both the court's persistent concern with the integrity of the election laws and its approach to construing the election laws. In *Boucher*, which arose before the passage of the direct primary legislation, the local party committee charged with the task of filing a certification of nomination of the party's candidate for town office failed to meet the October 4, 1938, 5 p.m. deadline for delivering the certificate of nomination. An attempted filing on October 5 by executive officers of the state committee, who were in fact without authority to make the filing, was refused by the town clerk solely because of its tardiness. After a lapse of 13 days, the executive committee officers, having obtained what they believed to be the necessary authorization, once again attempted to file. The certificate was refused.

This court in *Boucher* assumed without deciding that all statutory requisites necessary to a proper filing, other than timeliness, had been complied with on October 18 and, therefore, framed the issue as follows:

> "The fundamental and controlling question ∗ ∗ ∗ is whether the provision of the statute requiring nomina-tions to be filed not later than 5 p.m. on October 4 *is* mandatory and binding upon the state committee where the local committee has failed to file at the proper time." *Boucher* v. *Mailloux*, 61 R.I. at 513, 2 A.2d at 65.

In what *is* of primary importance in the instant case, the court there concluded that the provision was "mandatory and absolutely binding so far as the *local* committee [was] concerned ∗ ∗ ∗ ." (Emphasis added.) *Boucher* v. *Mailloux*, 61 R.I. at 513, 2 A.2d at 65.[7] What was said in *Boucher*

---

[7] It *is* true that the court deemed the statute not equally binding upon the state committee, but only because the statute expressly authorized the state committee to file nominations when the local committee had failed to do so. Since the statute had

about the local committee is equally applicable to the ward committee. There is not a hint of legislative support for the second endorsement given by the ward committee. Once the 5 p.m. deadline set forth in §17-12-11 had expired, the ward committee's power to endorse came to an end.

The suggestion that we supply by judicial fiat that which the Legislature has failed to supply would involve us in a policy matter which is vested by our state's constitution in the General Assembly. The language of §17-12-11 is free of ambiguity and uncertainty. Thus, we will not fill the gap left by DiMuccio's withdrawal. In conclusion, we would offer one final comment:

> "This court is duty bound to give due regard to the election laws of this state and give them full force and effect. * * * If the result appears to be harsh, the remedy is to be found in the state house not the courthouse." *Malinou* v. *Board of Elections,* 108 R.I. 20, 35, 271 A.2d 798, 805 (1970).

The petition for certiorari is granted, and the decision of the respondent board is quashed.

Mr. Justice Weisberger did not participate.

*Richard A. Gonnella, Ralph J. Gonnella, Ltd.,* for petitioner.

*Allen P. Rubine,* Special Assistant Attorney General, *John D. Biafore,* Assistant City Solicitor, *Pat Nero,* for Cranston Third Ward Democratic Committee, *Stephen F. Achille,* for respondents.

---

failed to specify how long a period after October 4 the state committee could have to avail itself of "this privilege," the court construed the statute to mean that the state committee had a "reasonable time" after the deadline had passed for the local committee. A 24-hour period following the deadline of 5 p.m. on October 4 was considered to be a reasonable time. *Boucher* v. *Mailloux,* 61 R.I. at 513-14, 2 A.2d at 65.