**Charles F. MULLANEY**

v.

**GILBANE BUILDING CO.**

**Rudolph PYLE**

v.

**BIF INDUSTRIES.**

**Marguerite AMATO**

v.

**GENERAL ELECTRIC–PROVIDENCE BASE PLANT WORKS.**

Nos. 84–221–Appeal, 84–313–Appeal & 84–599–M.P.

Supreme Court of Rhode Island.

Jan. 28, 1987.

Raul L. Lovett/Marc Gursky, Lovett, Scheffrin & Gallogly, Providence, for petitioner.

Diana E. Pearson/George E. Healy, Jr., Healy, Salem & Pearson, Michael T. Wallor, Hanson, Curran & Parks, Rudolph E. Boffi, H. Rice, Rice, Dolan & Kershaw, Providence, for respondents.

## OPINION

SHEA, Justice.

These consolidated petitions came before us from separate decrees of the Workers Compensation Commission denying benefits to three employees. In each case the trial commissioner ruled that since the employee's alleged disease or injury arose after the employee voluntarily withdrew from the work force, there was no earning capacity that could have been lost or diminished by the employee's disease or injury. The Workers Compensation Appellate Commission affirmed the trial commissioner in each instance. We affirm.

The essential facts of each case are uncontradicted. In the case of Charles Mullaney (Mullaney), a petition was filed with the Workers' Compensation Commission alleging disability attributable to asbestos commencing in October of 1981. Mullaney seeks workers' compensation benefits from October 1981 through the present.

At the hearing before the trial commissioner Mullaney testified that from 1941 through 1975 he worked as a union carpenter for a series of employers. In 1958 he worked for approximately three weeks for the Gilbane Building Company, building stagings for the construction of the post office in Providence. He testified that during this period of employment, ceiling insulation, which Mullaney understood to be asbestos, was applied using a fire hose. Mullaney finished this job and continued working until his voluntary retirement in 1975. Mullaney testified that he earned no wages after his retirement. In October of 1981, he consulted a physician for the treatment of what he thought was a bad cold. X rays were taken at that time, and Mullaney was told by his physician that there was a question of asbestos.

The trial commissioner raised a jurisdictional issue, stating that since Mullaney had retired and not earned any wages for a substantial period prior to the onset of his alleged occupational disease, he was unable to demonstrate a loss of earning capacity and his claim was therefore not within the jurisdiction of the Workers' Compensation Commission. The petition was denied and dismissed. The appellate commission sustained the decision of the trial commissioner.

In the case of Rudolph Pyle (Pyle), a petition was filed for workers' compensation benefits, alleging incapacity attributable to an injury to Pyle's knee and shoulder while employed by BIF Industries. The petition asserted that Pyle became totally incapacitated on and after November 23, 1979. Pyle also filed a petition alleging a similar injury in September 1972 and inca-

pacity on and after 1976. Pyle seeks benefits from 1976 through the present.

Pyle testified that he was injured at work in September, 1972, while he was employed as a "wirer," wiring panels and consoles and assembling controllers. He tripped and fell attempting to lift a "controller," striking his right knee. He consulted the company doctor at the plant dispensary. He lost no time from work as a result of the knee injury. Pyle's physician testified that he first treated Pyle in 1973 and continued to treat employee in 1974 and 1975. Pyle chose to retire from work in 1976.

Pyle saw his physician again in 1979 with a new complaint of "locking" in the knee. Surgery was recommended and a meniscectomy was performed in November of 1979.

The trial commissioner denied and dismissed Pyle's petitions. The appellate commission affirmed, noting that employee's incapacity commenced on November 23, 1979, the date of surgery on the knee. Since there was no incapacity until 1979, there was no earning capacity at the time that Pyle voluntarily retired in 1976.

In the case of Marguerite Amato (Amato), employee filed an original petition for workers' compensation benefits alleging incapacity from "inhalation of intoxicants" at work. She seeks benefits for total incapacity from March of 1979 through the present.

Amato testified that she assembled fluorescent light bases for her employer, General Electric-Providence Base Plant Works (General Electric). She used a semiautomatic machine to assemble the bases, and she was required to blow on the insulators, raising a cloud of dust. Amato retired from General Electric's employ in June of 1971. At that time she retired on a pension for total disability from polyarticular arthritis, which, it was agreed, was not work-related.

During her retirement Amato's pulmonary condition deteriorated, and in 1979 she consulted a physician. Amato's physician discovered that she had worked with asbestos dust. He diagnosed asbestosis based on a pulmonary test and X rays, and it was his opinion that the asbestosis was causally related to Amato's employment.

The trial commissioner denied the petition. He did not reach the question of whether the asbestosis was related to Amato's employment with General Electric. The trial commissioner did conclude that since employee retired in 1971 because of a nonwork related condition and had no incapacity from any lung condition until 1979, Amato no longer had an earning capacity that could have been lost or diminished by her alleged occupational disease. The appellate commission affirmed the trial commissioner's decree and denied the appeal.

■ We begin our analysis by noting the well-established principle that weekly workers' compensation benefits are not paid to a worker because of a physical disability but rather because one has, as a result of a work-related condition or injury, suffered a loss of one's earning capacity. *Brown v. Hope Service Station, Inc.*, 122 R.I. 74, 76, 403 A.2d 1387, 1388 (1979); *Accioli v. Josal Construction Co.*, 112 R.I. 215, 218, 308 A.2d 498, 499 (1973). A physical impairment alone does not entitle an employee to receive benefits under The Workers' Compensation Act, but a resulting lack of earning capacity does. *D'Iorio v. United States Rubber Co.*, 88 R.I. 369, 373, 148 A.2d 683, 685 (1959); *Weber v. American Silk Spinning Co.*, 38 R.I. 309, 315, 95 A. 603, 605 (1915). This court has also held that if there has not been a diminution of earning capacity, a worker may not receive workers' compensation benefits even though he has a permanent and lingering injury. *Parkinson v. Leesona Corp.*, 115 R.I. 120, 125, 341 A.2d 33, 36 (1975); *Catuto v. Monocraft Products Co.*, 105 R.I. 253, 255, 251 A.2d 165, 166 (1969).

■ There is *convincing evidence in each* of the three cases before us to warrant the finding that, at the time the disease or injury became disabling, each employee had voluntarily retired from the work force and

had therefore surrendered the capacity to earn wages. Since each employee did not have a capacity to earn any wages at the time he or she alleged the manifestation of the injury or disease, the threshold fact of whether loss or diminution of earning capacity existed was not presented. Accordingly, the Workers' Compensation Commission correctly ruled that it had no statutory authority under G.L.1956 (1986 Reenactment) chapters 29 through 38 of title 28, the Workers' Compensation Act, to decide these matters or to award the compensation the employees sought.[1]

For these reasons, the appeals of Mullaney and Pyle are denied, the decrees appealed from are affirmed, and the papers of those cases are remanded to the Workers' Compensation Commission. For the same reasons, Amato's petition for certiorari is denied, the writ heretofore issued is quashed, and the papers of this case are remanded to the Workers' Compensation Commission with our decision endorsed thereon.

1. During oral argument it was suggested that one or more of employees may be entitled to medical services absent incapacity. Such a claim, however, must be brought to the director of the department of workers' compensation under G.L.1956 (1986 Reenactment) § 28–33–9.

For purposes of clarity, it should also be noted that "[On June 24, 1986] all the provisions of chapters 29 to 38 inclusive, of title 28, heretofore carried out by the director of labor, shall be carried out by the director of the department of workers' compensation." General Laws 1956 (1984 Reenactment) § 42–16–1, as amended by P.L.1986, ch. 198, § 31.