Stuart PERLMAN

v.

PHILIP WOLFE, HABERDASHER.

No. 98–116–M.P.

Supreme Court of Rhode Island.

March 24, 1999.

John Harnett, Providence, for Plaintiff.

Peter E. Garvey, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case comes before us on a petition for certiorari filed by Philip Wolfe, Haberdasher (employer) to review a final decree issued by the Appellate Division of the Workers' Compensation Court (Appellate Division). The Appellate Division affirmed the trial judge's decision to grant certain petitions on behalf of the claimant, Stuart Perlman (Perlman), for workers' compensation benefits and for reimbursement of medical expenses. We granted the petition for the issuance of the writ and now reverse the decree of the Appellate Division.

### Factual and Procedural History

The present controversy arose as a result of a lower back injury that Perlman incurred on May 25, 1982, while attempting to lift a sewing machine in the course of his employment with the employer. As a result of this injury, Perlman received compensation benefits for a partial incapacity for a period of several years. Following a surveillance of Perlman, however,

which was conducted at the behest of the employer's insurance carrier, a hearing was conducted pursuant to the employer's petition to review.[1] As a result of this hearing, the Chairman of the then-Workers' Compensation Commission entered a decree dated January 3, 1990, wherein Perlman was found to be no longer totally or partially incapacitated, and an immediate suspension of compensation benefits was ordered. No appeal was taken from this decision and Perlman never returned to the work force.

On September 26, 1995, Perlman filed an employee's petition to review the suspension of benefits, alleging a return of his original work-related injury of May 25, 1982, commencing August 22, 1995.[2] At a pretrial hearing, a trial judge initially denied Perlman's petition. However, at a subsequent trial on the merits, Perlman prevailed. At trial, Perlman presented the deposition testimony of his treating physician, Dr. Edward Spindell (Dr. Spindell), an orthopedic surgeon, who reported that Perlman's disability had been continuing since 1982, and that in his opinion, had actually worsened over time. Doctor Philo F. Willetts (Dr. Willetts), the employer's examining physician, rendered a different opinion. Through deposition testimony, Dr. Willetts opined that Perlman's condition had not worsened since his first examination in 1989, but had in fact improved. Further, Dr. Willetts opined that Perlman's present condition was not related to the 1982 injury, but instead was caused by a 1966 condition that resulted in surgery. Ultimately, the trial judge found Dr. Spin-

dell's testimony to be more probative of Perlman's condition; consequently, he concluded that Perlman had satisfied the burden of proving a return of incapacity and reinstated Perlman's weekly benefits retroactive to August 22, 1995. Because Perlman was unable to demonstrate an earning capacity within the thirteen weeks immediately preceding the August 22, 1995 incapacity, however, the trial judge ordered weekly payments to be established by the original decree entered as a result of the May 25, 1982 injury.

On appeal, the Appellate Division affirmed the trial judge's decision while rejecting the employer's argument that Perlman was not entitled to benefits because he had been unemployed since 1990, and therefore could not demonstrate a loss of earning capacity. Specifically, the Appellate Division relied upon this Court's opinion in *Lisi v. Warren Oil Co.*, 601 A.2d 956 (R.I.1992), wherein we declared that "[w]hen a disability is classified as a recurrence, the insurer on risk at the time of the original injury is liable for the employee's disability," *id.* at 959, and ordered weekly compensation benefits at the rate in effect when Perlman was originally injured. Moreover, the Appellate Division found that in cases where an incapacity returns, it was immaterial as to whether or not the employee had left the work force voluntarily, because the rate in effect at the time of the original injury was the applicable rate. In support for this proposition, the Appellate Division noted that G.L.1956 § 28–33–20.1[3] provides that the

1. The surveillance video tape yielded evidence of Perlman, apparently while in an employment capacity, at Prime Auto Brokers (Prime) in Pawtucket, Rhode Island. Although Perlman denied that he was employed at Prime, he did admit to answering the telephone when he was alone in the building. Moreover, the video tape evidence demonstrated Perlman showing a Corvette automobile to two customers on Prime's lot with no signs of difficulty.

2. Perlman also sought payment for medication expenses in a companion petition to

review. That petition, WCC 96–148, was granted by the trial judge and affirmed by the Appellate Division. Employer has not challenged this petition and therefore it is not before this Court.

3. General Laws 1956 § 28–33–20.1, entitled "**Computation of earnings for recurrence— Burden of employee to establish recurrence**," states in relevant part:

"(a) In the event a person collecting benefits under this chapter, regardless of the date of injury, has returned to employment for a period of twenty-six (26) weeks or

recalculation of the average weekly wage for recurrence injuries is limited to those cases "where the employee has been employed for wages for twenty-six (26) weeks prior to the date of the recurrence. *Otherwise, the earnings capacity established in the earlier order or decree still controls.*" (Emphasis added.) We granted the employer's petition for certiorari and now reverse.

## Analysis

On review, the employer asserts that the Appellate Division erred as a matter of law in its interpretation and application of § 28–33–20.1. Specifically, the employer asserts that § 28–33–20.1 is the exclusive method for recalculating an earning capacity upon a return of incapacity, and that in order to qualify for recurrence benefits, an employee must have returned to work for at least twenty-six weeks. The employer contends that because Perlman has not worked for the twenty-six weeks prior to the recurrence, he has failed to establish an earning capacity and therefore should surrender his entitlement to workers' compensation benefits. In other words, the employer argues that the workers' compensation scheme in this state is designed to compensate an injured worker for a loss of earning capacity, rather than for an injury, and that where, as here, there are no earnings prior to the recurrence, there can be no loss of earning capacity. We respectfully disagree with this contention. Instead, in cases where the employee has alleged a recurrence of incapacity, we shall deny recovery only in those cases where the employee has voluntarily withdrawn from the work force. By establishing this rule, we recognize a myriad of reasons why an injured worker may be unable to

demonstrate an earning capacity for the twenty-six weeks prior to a recurrence of a work-related injury, not all of which amount to a voluntary withdrawal from the work force, and not all of which constitute disqualifying events that preclude the recovery of benefits.

Recently, in *Lambert v. Stanley Bostitch, Inc.*, 723 A.2d 777 (R.I.1999), we had occasion to address an injured worker's entitlement to compensation benefits when the employee had not worked for the statutorily prescribed period of thirteen weeks immediately preceding the date of incapacity. We affirmed the Workers' Compensation Court Appellate Division's decree that awarded Lambert benefits, notwithstanding his failure to work the thirteen weeks prior to his incapacity. *Id.*, 723 A.2d at 783. Specifically, we declared that an employee's inability to earn a weekly wage during the requisite thirteen weeks prior to the date of incapacity was not fatal to the claim for benefits when the failure to work was involuntary. *Id.* at 781. In doing so, we distinguished *Mullaney v. Gilbane Building Co.*, 520 A.2d 141 (R.I.1987), and limited its holding to situations wherein the employee has voluntarily left the work force, either through retirement or other volitional reasons. *Lambert*, 723 A.2d at 782. Moreover, we declared that "[i]t would be irrational and inconsistent with the underlying purpose of the workers' compensation statute," as well as incompatible with the Legislature's intent, for us to conclude that an injured worker should be without benefits because, through no fault of his or her own, he or she could not establish an earning capacity for the thirteen weeks preceding the incapacity. *Id.*

more and suffers a recurrence of the injury which precipitated the person collecting benefits under this chapter, the average weekly wage shall be ascertained by dividing the gross wages earned by the injured worker in employment by the employer in whose service he or she is injured during the thirteen (13) calendar weeks immediately preceding the week in which he or she

suffered the recurrence, by the number of calendar weeks during which, or any portion of which, the worker was actually employed by that employer; but in making this computation, absence for seven (7) consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week."

Often, this Court has stated that " '[t]he primary object of [workers'] compensation is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings.' " *Id.*; *See also Cole v. Davol, Inc.,* 679 A.2d 875, 877 (R.I.1996); *Geigy Chemical Corp. v. Zuckerman,* 106 R.I. 534, 541, 261 A.2d 844, 848 (1970). However, we have also recognized that benefits are payable only for injuries that impair an employee's earning capacity, and that "[w]hen a retired person files for benefits for an injury incurred during his or her employment, he or she has no compensable loss of earning capacity." *Wright v. Rhode Island Superior Court,* 535 A.2d 318, 321 (R.I.1988) (citing *Mullaney,* 520 A.2d at 143–44).

■ We conclude the reasoning that underlies our opinion in *Lambert,* a case involving an original petition for benefits, applies equally to situations wherein an employee alleges a recurrence of an injury. Consequently, an employee's inability to demonstrate weekly wages for a minimum twenty-six week period prior to the recurrence is not a per se bar to the receipt of workers' compensation benefits as the employer would have us declare. Instead, we hold that when an employee files a petition for benefits arising from a recurrence, and when that employee has not worked for the requisite period as set forth in § 28–33–20.1, the employee bears the burden of establishing that his or her absence from the work force was not voluntary; that is, "[t]he hiatus in [claimant's] actual employment was due not to his [or her] retirement or to his [or her] unwillingness to work," but instead was due to some non-volitional cause, such as an inability to work as a result of the original injury or occupational disease, or from the employer's refusal to allow the employee to return to work or an inability to obtain employment after a reasonable opportunity to do so. *Lambert,* 723 A.2d at 782.

■ Notwithstanding this rule, or our holding in *Lambert,* we are of the opinion that these legal principles are of no mo-

ment to Perlman because the Appellate Division found that Perlman "voluntarily chose not to reenter the work force [sic] from 1990 through 1995." Accordingly, we conclude that Perlman's inability to demonstrate an earning capacity for the twenty-six weeks prior to his recurrence is fatal to his claim and unfortunately, does not entitle him to compensation benefits. The fact that Perlman previously was found by a workers' compensation commissioner to be employed gainfully and no longer disabled required him to present some plausible explanation for his absence from the work force. Moreover, we note the extraordinary length of time that Perlman was unemployed. Consequently, we are satisfied that Perlman's situation is more akin to the employees in *Mullaney* and *Wright,* wherein we declared that a petition for workers' compensation benefits filed by a retired person alleging an injury incurred during that person's employment must be denied on the ground that "he or she has no compensable loss of earning capacity." *Wright,* 535 A.2d at 321. *See also Mullaney,* 520 A.2d at 143–44 (employee who voluntarily retired from work force surrendered capacity to earn wages).

Therefore, for the reasons stated herein, we grant the petition for certiorari and quash the decree of the Workers' Compensation Court Appellate Division. The papers in this case may be returned to the Appellate Division with our opinion endorsed thereon.