# JOHN W. BUTTS *v.* SUSAN BYSIEWICZ, SECRETARY OF THE STATE OF CONNECTICUT
## (SC 18663)

Rogers, C. J., and Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 15—officially released October 26, 2010

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Wesley W. Horton*, for the appellant (plaintiff).

*Michael K. Skold*, assistant attorney general, with whom were *Robert W. Clark*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

KATZ, J. This certified public interest appeal raises the question of whether the Secretary of the State has discretion to place a candidate's name on the ballot as a nominee of a political party when the candidate failed to deliver the certificate of the party's endorsement to the Secretary of the State within the deadline prescribed under General Statutes § 9-388,[1] and, if not, whether

---

[1] General Statutes § 9-388 provides in relevant part: "Whenever a convention of a political party is held for the endorsement of candidates for nomination to state or district office, each candidate endorsed at such convention shall file with the Secretary of the State a certificate, signed by him, stating that he was endorsed by such convention, his name as he authorizes it to appear on the ballot, his full residence address and the title and district, if applicable, of the office for which he was endorsed. Such certificate shall be attested by either (1) the chairman or presiding officer, or (2) the secretary of such convention and shall be received by the Secretary of the State not later than four o'clock p.m. on the fourteenth day after the close of such convention. Such certificate shall either be mailed to the Secretary of the State by certified mail, return receipt requested, or delivered in person, in

the court can exercise its equitable authority to order the Secretary of the State to do so. The plaintiff, John W. Butts, appeals, upon the Chief Justice's grant of certification pursuant to General Statutes § 52-265a,[2] from the trial court's judgment denying the plaintiff's request for an injunction compelling the defendant, Secretary of the State Susan Bysiewicz, to place the plaintiff's name on the general election ballot as the endorsed Democratic candidate for judge of probate for the thirty-second probate district. Because of the expeditious nature of the election proceedings, on September 15, 2010, we announced from the bench our decision affirming the trial court's judgment and indicated that a written opinion would follow in due course. This is that opinion.

The record reveals the following stipulated or undisputed facts. The plaintiff is the incumbent judge of probate for the probate district of Salem. Pursuant to a recent reorganization of the probate court system, on January 5, 2011, the district of Salem will be incorporated into the newly established thirty-second probate district. On May 11, 2010, the Democratic party held a convention for purposes of endorsing a candidate for judge of probate for the thirty-second probate district. The plaintiff unanimously was endorsed that day as the party's candidate. No other person filed a petition seeking a Democratic primary for that position.

which case a receipt indicating the date and time of delivery shall be provided by the Secretary of the State to the person making delivery. If a certificate of a party's endorsement for a particular state or district office is not received by the Secretary of the State by such time, such certificate shall be invalid and such party, for purposes of section 9-416 and section 9-416a shall be deemed to have made no endorsement of any candidate for such office. . . ."

[2] General Statutes § 52-265a (a) authorizes the Chief Justice to certify a direct appeal from the Superior Court to the Supreme Court "in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice . . . ."

As the party's endorsed candidate, the plaintiff was required, pursuant to § 9-388, to deliver a certificate attesting to the party's endorsement to the defendant by 4 p.m. on the fourteenth day following the convention, which in the present case was May 25, 2010. The statute directs the candidate to either mail the certificate by certified mail, return receipt requested, or deliver the certificate in person and obtain a receipt from the defendant evidencing delivery. See footnote 1 of this opinion.

On May 11, the day of the convention, the plaintiff filled out and signed a certificate of endorsement. After a discussion among party officials, Cyril Longton, the secretary of the convention, agreed to mail the certificate to the defendant. Longton did not send the certificate by certified mail. Instead, on May 15, 2010, Longton delivered to a clerk at the post office in Uncasville an envelope containing the certificate and paid the proper postage for the envelope to be sent by first class mail to the defendant's office. The envelope bore the correct address for the defendant's office and Longton's return address. The certificate of endorsement was not received by the defendant's office nor was it returned to Longton's address.

On July 5, 2010, the plaintiff learned that his name was not listed on the defendant's website as the Democratic nominee for the thirty-second probate district. The defendant's office thereafter informed the plaintiff that it had not listed his name because it did not have his certificate of endorsement. At the plaintiff's request, the defendant's staff conducted a search of their offices but did not locate the certificate. On July 7, 2010, the defendant's office informed the plaintiff that, because it had not received the party's certificate of endorsement by the deadline prescribed under § 9-388, it would not place his name on the ballot for the general election as the endorsed Democratic candidate. On August 11,

2010, the plaintiff hand delivered a substitute original certificate of endorsement to the defendant.

Two days later, the plaintiff commenced the present action seeking, inter alia, a permanent injunction to compel the defendant to place the plaintiff's name on the ballot for the general election as the endorsed Democratic candidate for probate judge for the thirty-second probate district.[3] On August 27, 2010, the trial court issued its memorandum of decision denying the plaintiff's request. The court concluded that the text of the statute making the endorsement invalid if it was received untimely compelled such a result. The trial court rejected the plaintiff's reliance on a trio of Superior Court decisions that had ordered the Secretary the State to place candidates' names on the ballot when their failure to deliver the certificate within the prescribed deadline was due to inadvertence under the reasoning that the interests of the party and the voters outweighed the Secretary of the State's interest in a strict construction of the statute. The trial court determined that two of the decisions effectively had been overruled by the 2006 amendment to § 9-388, which had

---

[3] The plaintiff also sought a temporary injunction to enjoin the defendant from publishing the list of candidates for the November, 2010 general election and a writ of mandamus to compel the defendant to place the plaintiff's name on the ballot for the general election. The trial court held a hearing, which, by stipulation of the parties, constituted the trial on the plaintiff's claims for both temporary and permanent relief. The trial court's memorandum of decision did not address separately the plaintiff's request for a writ of mandamus. In his brief to this court, the plaintiff cites no authority for the proposition that the law imposes a mandatory duty on the defendant to place his name on the ballot under these circumstances. See *Miles* v. *Foley*, 253 Conn. 381, 391, 752 A.2d 503 (2000) (A writ of mandamus will be granted "only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when [1] the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; [2] the party applying for the writ has a clear legal right to have the duty performed; and [3] there is no other specific adequate remedy." [Internal quotation marks omitted.]). Accordingly, we limit our analysis to the question of injunctive relief.

added the language rendering the untimely certificate invalid and requiring delivery by specified methods. See Public Acts 2006, No. 06-137, § 2 (P.A. 06-137). The court determined that the third decision, rendered after the effective date of PA. 06-137, had failed to account for the legislature's intent in amending the statute. The court therefore concluded that the plaintiff was not entitled to injunctive relief. This certified public interest appeal followed. See footnote 2 of this opinion.

The plaintiff thereafter filed a motion in the trial court seeking an articulation as to whether "the court concluded that it does not have authority to issue an injunction in this case, or that it has the authority but declines to issue an injunction as an exercise of discretion." The trial court thereafter issued the following articulation: "The court concluded that it lacked authority to enjoin the [defendant] because the 2006 amendments to . . . § 9-388 were intended to invalidate late filed certificates of endorsement."

On appeal, the plaintiff claims that: (1) the defendant has discretion to accept a certificate of endorsement filed after the time specified in § 9-388, as long as there is substantial compliance with the purpose of the statute; and (2) regardless of whether the defendant has such discretion, the trial court has equitable authority to compel the defendant to place the plaintiff's name on the ballot.[4] The plaintiff contends that § 9-388 makes a distinction between competent *evidence* of the endorsement—the certificate—and the party's *actual*

---

[4] We note that the plaintiff's brief to this court asserts as his first and principal claim that the court has authority to provide equitable relief and asserts as a second, alternative claim that the defendant has discretion to place his name on the ballot. Because we conclude that the question of whether the defendant has discretion under the statute to place the plaintiff's name on the ballot under these circumstances largely controls the outcome of this appeal, we address that issue first and analyze all aspects of the statutory text in connection with that question before turning to the question of the court's authority.

*endorsement* of the candidate. He contends that, although a failure to file timely the certificate of endorsement renders the certificate invalid, the endorsement is not similarly rendered invalid. Instead, according to the plaintiff, an untimely filing merely results in a *presumption*, which may be rebutted by competent evidence, that the candidate has not been endorsed. Thus, even if compliance with the statutory deadline is mandatory, the plaintiff posits that substantial compliance with the purpose of § 9-388—timely presented, competent evidence of the party's nomination—is legally sufficient and consistent with the constitutional rights implicated.

The defendant responds that a failure to file timely a certificate of endorsement in accordance with § 9-388 is a fatal defect for which neither the defendant nor the court can provide relief. In support of this contention, the defendant points to the text of the statute and claims that the plaintiff's construction would yield irrational results. The defendant further contends that the 2006 amendment to § 9-388 was a legislative rejection of the Superior Court cases that had afforded relief under similar circumstances. The defendant also asserts that the deadline under § 9-388 is only one part of a comprehensive election calendar that would be difficult to implement if parties are not required to adhere strictly to such deadlines. See http://www.sots. ct.gov/sots/lib/sots/electionservices/calendars/2010 election/2010electioncalendar.pdf (last visited October 8, 2010) (copy contained in record of this case in Supreme Court clerk's office). Finally, the defendant contends that equitable relief should not be afforded even if it is available because the plaintiff did not comply with any of the statutory requirements in that he delegated his responsibility to deliver the certificate to someone else, delivery of the certificate was not attempted by either of the prescribed methods, and

delivery of the substitute certificate was not made until seventy-eight days after the deadline and thirty-four days after the plaintiff learned that the defendant had not received the original. We conclude that the legislature has evidenced a clear intent to require strict compliance with the filing deadline under § 9-388 such that neither the defendant nor the court effectively can extend the deadline due to unintentional noncompliance.

In considering the questions presented, we apply well settled principles. Because the plaintiff contends that the trial court's decision was predicated on an improper construction of § 9-388, we apply plenary review. *Gonzalez* v. *Surgeon*, 284 Conn. 554, 565–67, 937 A.2d 13 (2007). "[W]hen interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . To do so, we first consult the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z."[5] (Internal quotation marks omitted.)

[5] Although we recently set forth these general rules of construction in a case also requiring us to construe a statute affecting ballot access; see *Gonzalez* v. *Surgeon*, supra, 284 Conn. 566; see also *Caruso* v. *Bridgeport*, 285 Conn. 618, 638–39, 941 A.2d 266 (2008); the plaintiff contends in his appellate brief that another rule should apply in the present case. Specifically, the plaintiff points to a line of cases stating the following principle: "If there is to be disfranchisement, it should be because the legislature has seen fit to require it in the interest of an honest suffrage, and has expressed that requirement in *unmistakable language*. It should not result from doubtful judicial construction, from a too strict regard for the mere letter of the statutes, or from a resort to nice or technical refinements in either interpretation or application." (Emphasis added.) *Flanagan* v. *Hynes*, 75 Conn. 584, 588, 54 A. 737 (1903); accord *Wrinn* v. *Dunleavy*, 186 Conn. 125, 144–45, 440 A.2d 261 (1982); *Dombkowski* v. *Messier*, 164 Conn. 204, 207, 319 A.2d 373 (1972); *Phelan* v. *Walsh*, 62 Conn. 260, 291, 25 A. 1 (1892). The plaintiff contends that, under this rule: any ambiguity in the statute demonstrates that the legislature has not expressed an intent to limit ballot

*Gonzalez* v. *Surgeon,* supra, 565–66. "A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." *In re Jan Carlos D.,* 297 Conn. 16, 21, 997 A.2d 471 (2010).

In the present case, the plaintiff makes no claim that the filing deadline is unconstitutional because it imposes an unreasonable or discriminatory burden on party endorsed candidates.[6] Nonetheless, in construing

---

access in the requisite "unmistakable language"; resort to extratextual sources is precluded to clarify any ambiguous statutory text; and judgment in his favor is required.

We note that, in his trial brief, the plaintiff did not claim that resort to extratextual sources was precluded, and indeed he relied largely on such sources. We further note that the cases referred to by the plaintiff involved the *actual* disfranchisement of voters in that the issue was whether ballots cast at an election must be deemed void due to a claimed procedural or substantive defect. The plaintiff has not established that strict application of the deadline under § 9-388, in and of itself, disfranchises voters, the political party or candidates. At oral argument in this court, the defendant's counsel asserted that application of § 9-388 simply invalidates the endorsement, which is one means by which to obtain ballot access, and does not preclude a candidate from utilizing other statutory procedures to obtain a place on the ballot as a Democratic candidate, an independent candidate or a write-in candidate. See General Statutes § 9-373a (allowing registration of write-in candidates up to fourteenth day preceding election); General Statutes § 9-400 (allowing submission of signed petitions to be party candidate by sixty-third day preceding day of primary); General Statutes § 9-453i (a) (allowing submission of nomination petition for independent or unaffiliated candidate by ninetieth day preceding day of regular election). In response, the plaintiff's counsel stated: "It's not clear whether the plaintiff could have been an endorsed candidate by petitioning for a primary by the time he found out [that he was not listed as a nominee] . . . ." Without expressing an opinion as to whether all of these avenues would have been available to the plaintiff, it suffices to say that a timely inquiry and expeditious action leave open other mechanisms by which a candidate and a party may obtain access to the ballot.

[6] "[W]hen a state ballot access law provision imposes only reasonable, nondiscriminatory restrictions upon the plaintiffs' [f]irst and [f]ourteenth [a]mendment rights, a [s]tate's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. [*Timmons* v. *Twin Cities Area New Party,* 520 U.S. 351, 358, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997)]." (Internal quotation marks omitted.) *Swanson* v. *Worley,* 490 F.3d 894, 903 (11th Cir. 2007).

§ 9-388, we are mindful that "[s]tate statutes which restrict the access of political parties to the ballot implicate associational rights as well as the rights of voters to cast their votes effectively. *Munro* v. *Socialist Workers Party*, 479 U.S. 189, 193, 107 S. Ct. 533, 93 L. Ed. 2d 499 (1986)." *Libertarian Party* v. *Herrera*, 506 F.3d 1303, 1310 (10th Cir. 2007). "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. . . . Freedom of association means not only that an individual voter has the right to associate with the political party of her choice . . . but also that a political party has a right to identify the people who constitute the association . . . and to select a standard bearer who best represents the party's ideologies and preferences." (Citation omitted; internal quotation marks omitted.) *Nielsen* v. *Kezer*, 232 Conn. 65, 86–87, 652 A.2d 1013 (1995). "Each provision of [an election] code, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. *Anderson* v. *Celebrezze*, 460 U.S. 780, 788 [103 S. Ct. 1564, 75 L. Ed. 2d 547] (1983)." (Internal quotation marks omitted.) *Burdick* v. *Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992). Therefore, "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." (Internal quotation marks omitted.) Id. It generally is understood that filing deadlines for ballot access "are designed to ensure the integrity of the election process in general." *Forcade-Osborn* v. *Madison County Electoral Board*, 334 Ill. App. 3d 756,

760, 778 N.E.2d 768 (2002); accord *Gomes* v. *Rhode Island State Board of Elections*, 120 R.I. 951, 956, 393 A.2d 1088 (1978) (deadlines "ensure the orderly functioning of the primary-election timetable so that those responsible will have sufficient time to prepare that ballot properly").

Therefore, to give due weight to the interests of the voters, candidates and political parties, on the one hand, and the legislature, on the other hand, we are guided by the following additional principles. Ambiguities in election laws are construed "to allow the greatest scope for public participation in the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day." *New Jersey Democratic Party, Inc.* v. *Samson*, 175 N.J. 178, 190, 814 A.2d 1028 (2002). "This principle, however, does not authorize the court to substitute its views for those of the legislature . . . ." *Gonzalez* v. *Surgeon*, supra, 284 Conn. 569.

With these principles in mind, we turn to the text of § 9-388. That statute provides in relevant part: "Whenever a convention of a political party is held for the endorsement of candidates for nomination to state or district office, each candidate endorsed at such convention shall file with the Secretary of the State a certificate, signed by him, stating that he was endorsed by such convention . . . . Such certificate . . . *shall be received by the Secretary of the State not later than four o'clock p.m. on the fourteenth day after the close of such convention.* Such certificate shall either be mailed to the Secretary of the State by certified mail, return receipt requested, or delivered in person, in which case a receipt indicating the date and time of delivery shall be provided by the Secretary of the State to the person making delivery. *If a certificate of a party's endorsement for a particular state or district office*

*is not received by the Secretary of the State by such time, such certificate shall be invalid and such party, for purposes of section 9-416 and section 9-416a shall be deemed to have made no endorsement of any candidate for such office. . . ."* (Emphasis added.) General Statutes § 9-388.

We begin with the legislature's direction in § 9-388 that the certificate "shall be received" by the Secretary of the State not later than a specified day and time. "Definitive words, such as must or shall, ordinarily express legislative mandates of nondirectory nature." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 101, 989 A.2d 1027 (2010). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience." (Internal quotation marks omitted.) Id., 100. As we explain in the following discussion, receipt of the certificate is an essential predicate to a determination as to whether a primary is to be held, as well as an integral component of the effective administration of the election calendar.

We note that it long has been settled in other jurisdictions that statutes employing such language in filing deadlines for ballot access are deemed mandatory, and that, with limited exceptions not implicated in the present case, strict compliance is required such that neither the election official nor the court can excuse a candidate's inadvertent noncompliance.[7] See 26 Am. Jur. 2d

---

[7] Some jurisdictions have concluded that, in extraordinary circumstances, courts can excuse a failure to comply with mandatory filing deadlines for declarations of candidacy due to (1) an action by the state, particularly election officials, causing the late filing, or (2) the impossibility of compliance. See, e.g., *State* v. *Jeffery*, 170 P.3d 226, 235 (Alaska 2007); *Bayne* v. *Glisson*, 300 So. 2d 79, 82–83 (Fla. App.), cert. denied, 301 So. 2d 778 (Fla. 1974); *Ryshpan* v. *Cashman*, 132 Vt. 628, 630, 326 A.2d 169 (1974); *Donohoe* v. *Shearer*, 53 Wn. 2d 27, 30–31, 330 P.2d 316 (1958); see also *In re Holmes*, 346 N.J. Super. 372, 376–78, 788 A.2d 291 (App. Div. 2001) (absentee ballots

47–48, Elections § 216 (2004); see, e.g., *Andrews* v. *Secretary of State*, 235 Md. 106, 109, 200 A.2d 650 (1964); *Smith* v. *Kiffmeyer*, 721 N.W.2d 912, 914–15 (Minn. 2006). In the present case, however, we need not determine whether such language alone would compel a similar conclusion. In addition to stating that the certificate "shall" be received by a specified date and time, § 9-388 also attaches negative consequences to noncompliance—the "certificate shall be invalid," and the "party . . . shall be deemed to have made no endorsement . . . ." Such consequences unmistakably evidence a mandatory intent. See *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 790–91, 961 A.2d 349 (2008) (citing these factors as indicative of mandatory, not directory, language); *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 681, 694 A.2d 1218 (1997) (same); *State* v. *Metz*, 230 Conn. 400, 410–11, 645 A.2d 965 (1994) (same).

It also is evident that, because these consequences ensue if the certificate is not timely "received" by the defendant, compliance is established by delivery to the defendant, not by the candidate's mailing of the certificate prior to the expiration of the deadline.[8] The significance of actual delivery is underscored by the statutory

counted despite delivery beyond statutory deadline for those ballots that would have arrived timely but for anthrax contamination causing processing delays at postal facility). No such circumstance is implicated in the present case, and we express no opinion as to whether courts would have authority to extend filing deadlines under such extraordinary circumstances.

[8] We are unaware of any jurisdiction that applies the "mailbox rule" in the context of election filing deadlines. Cf. *Harris* v. *Donovan*, 269 Minn. 574, 129 N.W.2d 797 (1964) (holding that depositing affidavit of candidacy in mail does not constitute "filing" within meaning of statute); *Johnson* v. *Herseth*, 246 N.W.2d 102, 104–107 (S.D. 1976) (statute providing that nomination made by party committee " 'shall be filed' " by specified date required delivery to secretary of state's office within time fixed by statute). The mailbox rule, a general principle of contract law, "provides that a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received." *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 418, 880 A.2d 882 (2005).

directive to deliver the certificate by one of two specified methods that provide the candidate with proof of the date of receipt—certified mail or personal delivery. By providing two such methods, the legislature has ensured that the candidate not only has a means to ascertain whether he has complied with the deadline—the dated delivery receipt—but also a means to comply until the last day of the deadline—in person delivery. Thus, the legislature clearly has placed the risk of nondelivery on the prospective candidate who chooses to file his or her candidacy documents by other methods.[9]

In light of our conclusion that compliance with the statutory deadline is mandatory and is established by actual receipt of the certificate, we turn to the question of whether strict compliance is required, as the trial court concluded, or whether § 9-388 either leaves the defendant with discretion to place a candidate's name on the ballot despite noncompliance or allows the court to order her to do so, as the plaintiff contends. That question is resolved by examining the prescribed consequences of noncompliance.

Under § 9-388, if a certificate of a party's endorsement is not received by the prescribed deadline, the "certificate shall be invalid . . . ." The common meaning of the term invalid is to lack legal effect. See Black's Law Dictionary (9th Ed. 2009) (defining "invalid" as "[n]ot legally binding . . . [w]ithout basis in fact"); Webster's Third New International Dictionary (1993) (defining "invalid" as "being without foundation in fact or truth

---

[9] Accordingly, we reject the plaintiff's suggestion that the court should presume that the certificate was timely delivered because: (1) there is no way to know whether the certificate was lost in the mail or was misplaced by the defendant's office; and (2) the law generally recognizes a rebuttable presumption of delivery in due course when a letter is properly addressed and duly mailed. We note, however, that we do not deem fatal to the plaintiff's claim his failure to use either of the specified methods of delivery, but, rather, his failure to ensure receipt by the filing deadline.

. . . lacking in effectiveness . . . being without legal force or effect"). Although the plaintiff suggests that this consequence of invalidity is merely directory, "[l]inguistically, a statutory provision generally is considered directory if the requirement is stated in affirmative terms *unaccompanied by negative words*." (Emphasis added; internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, supra, 289 Conn. 790. The word "invalid" in § 9-388 undoubtedly is a negative word, which, used in connection with "shall be," leads to the inescapable conclusion that this provision is not directory, but mandatory. Therefore, it is clear that the defendant has no discretion to give legal effect to the certificate if it is delivered untimely.

That the delivery of such a certificate has a substantive effect is further evidence that strict compliance with the requirements of § 9-388 is required. It is undisputed that the certificate is the only statutorily authorized means by which the defendant is permitted to recognize a party's endorsement of a candidate as its nominee. The nomination evidenced by the certificate, in turn, is an essential predicate to the defendant's authority to place a candidate's name on the ballot. See General Statutes § 9-379.[10] Thus, in the absence of a valid certificate, the defendant has nothing upon which to act. Cf. *Johnson* v. *Herseth*, 246 N.W.2d 102, 107 (S.D. 1976) ("[The statute] requires a nomination [to fill a vacancy] made by a party committee to be delivered to the secretary of state's office within the time fixed by that statute. The fact that the secretary of state may have learned from the news media that [the] petitioner had been selected by the Minnehaha County Republican

---

[10] General Statutes § 9-379 provides: "No name of any candidate shall be printed on any official ballot at any election except the name of a candidate nominated by a major or minor party unless a nominating petition for such candidate is approved by the Secretary of the State as provided in sections 9-453a to 9-453p, inclusive."

Central Committee to fill the vacancy created by the withdrawal of a successful candidate is irrelevant. There was nothing before the secretary of state to act upon, and [the] petitioner can point to no statutory duty that the secretary of state failed to perform.").

The other consequence specified under § 9-388 further demonstrates the effect of the invalidity of a certificate that is not received timely. Section 9-388 directs that "[the] party, for purposes of section 9-416[11] and section 9-416a[12] shall be deemed to have made no endorsement of any candidate for such office." General Statutes §§ 9-416 and 9-416a address the circumstances under which there is to be a party primary, which is determined by reference to whether there is or is not a party endorsed candidate. Pursuant to § 9-416, when no one is contesting the "party-endorsed candidate"; see General Statutes § 9-372 (9);[13] "no primary shall be

[11] General Statutes § 9-416 provides: "If (1) at a state or district convention no person other than a party-endorsed candidate has received at least fifteen per cent of the votes of the delegates present and voting on any roll-call vote taken on the endorsement or proposed endorsement of a candidate for a state or district office, and (2) within the time specified in section 9-400, no candidacy for nomination by a political party to a state or district office has been filed by or on behalf of a person other than a party-endorsed candidate in conformity with the provisions of section 9-400, no primary shall be held by such party for such office and the party-endorsed candidate for such office shall be deemed to have been lawfully chosen as the nominee of such party for such office."

[12] General Statutes § 9-416a provides: "If a party has made no endorsement of a candidate for a particular state or district office, and if within the time specified in section 9-400, a candidacy for such party's nomination to such office is filed in conformity with the provisions of said section by not more than one person, no primary shall be held by such party for such office and the person filing such candidacy shall be deemed to have been lawfully chosen as the nominee of such party for such office."

[13] General Statutes § 9-372 (9) provides in relevant part: " 'Party-endorsed candidate' means (A) in the case of a candidate for state or district office, a person endorsed by the convention of a political party as a candidate in a primary to be held by such party . . . ." We note that this definition reflects that the party's nomination entitles the candidate to a place on the primary ballot, not the general election ballot.

held by such party for such office and the party-endorsed candidate for such office shall be deemed to have been lawfully chosen as the nominee of such party for such office." General Statutes § 9-416. By operation of the penalties under § 9-388, however, there is no party endorsed candidate when the certificate is filed untimely. Pursuant to § 9-416a, if there is *no* party endorsed candidate and if a candidacy is properly filed through other statutory mechanisms by no more than one person,[14] "no primary shall be held by such party for such office and the person filing such candidacy shall be deemed to have been lawfully chosen as the nominee of such party for such office." Similarly, by operation of the penalties under § 9-388, the party's endorsement is given no effect for purposes of determining whether to hold a primary. To conclude otherwise would give rise to the possibility that one person could claim to be the lawfully chosen nominee of the party and to be entitled to proceed to the general election in that capacity, whereas another person in the plaintiff's position could claim to be the party endorsed candidate and entitled to a primary contest. The legislature reasonably could not have intended such a result.

Despite the seemingly irrational conflict that his construction of § 9-388 could create, the plaintiff contends that the legislature intended to provide a means by which the party endorsed candidate's name could

---

[14] There are three ways to obtain a place on the primary ballot as a party's candidate for a state or district office. A person may: (1) receive his party's endorsement at the party convention, thereby becoming the party endorsed candidate; (2) receive at least 15 percent of the votes of the convention delegates voting on the endorsement; or (3) collect a specified number of signatures on a nominating petition. See General Statutes §§ 9-388 and 9-400. Under the first two options, the candidate is required to file a certificate with the Secretary of the State; General Statutes § 9-388; under the third option, the candidate is required to file the petition pages with the town registrar, who in turn forwards the pages to the Secretary of the State. General Statutes § 9-400.

appear on the ballot despite the invalidity of the certificate because § 9-388 provides that the party "shall be *deemed* to have made no endorsement . . . ." (Emphasis added.) The plaintiff contends that the term "deemed" sets forth a mere *presumption* that the party has not made an endorsement, which can be overcome by competent evidence that the endorsement in fact has been made. He contends that, even if the legislature originally did not intend for the term deemed to set forth such a presumption, its failure to change this language when it amended the statute in 2006 demonstrates its acquiescence to Superior Court case law construing the statute to have such an effect. We disagree.

We note that the plaintiff concedes, properly in our view, that the defendant's office is not an appropriate forum for weighing evidence.[15] He therefore contends that, when an evidentiary hearing is necessary because the certificate is invalid, the legislature intends for the court to undertake such a task. In light of this concession and our preceding statutory analysis, there can be no question that the legislature has left the defendant no discretion to place a candidate's name on the ballot

---

[15] The plaintiff states in his brief to this court: "[W]ithout a certificate of endorsement, the defendant has no competent evidence and arguably no ability to establish that an endorsement has been made. Certainly, the legislature would not want to put the [defendant] in the position of having to make an independent investigation each time a political party endorses a candidate for office. It is therefore reasonable to conclude that the legislature, by rendering the certificate 'invalid,' intended to clarify this purpose and make plain that the defendant cannot recognize a party endorsement in the absence of the customary certificate. The trial court, on the other hand . . . has the means and the expertise necessary to apply its equitable authority to find, in an appropriate case, that a rebuttable presumption has been overcome by other competent evidence." We also note that the plaintiff acknowledged at oral argument before this court that, because certificates to appear on the ballot as a party's nominee must be filed with the defendant for state, municipal and district offices; see General Statutes §§ 9-391 and 9-400; the defendant's office receives scores of such certificates every election cycle.

if the deadline under § 9-388 is not met. We therefore turn to the question of whether the legislature nonetheless intended to allow the court, exercising its equitable power, to order the defendant to place a candidate's name on the ballot if there is competent evidence that the party had endorsed the candidate.

We begin with the observation that we are unaware of any circumstance under which the legislature has authorized the court to compel a state official to perform an act that the official is barred by statute from doing. The plaintiff was unable to identify any other statutes that permit the court to do so. Indeed, there is authority from other jurisdictions expressly holding to the contrary in this precise context.[16]

We further conclude that, although the common meaning of "deem" may be sufficiently broad to encompass the meaning ascribed by the plaintiff,[17] a contextual review of this term undermines the plaintiff's interpretation. We first note that the phrase "shall be deemed" is used in more than 1300 statutes, fifty-seven of which are in the election title of the General Statutes. See

[16] As one court noted: "Equity only applies in the absence of a specific statutory mandate. . . . [I]t is not [a court's] place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree. . . . This should be particularly true of election law. If this [c]ourt were to erode the statutory requirements of election law through the use of equity, we would create ambiguity and inconsistency in what needs to be a uniform and stable area of law. Once one exception is created, the very foundation of our form of government can be questioned and our citizens may lose faith. . . . Holding otherwise invites the destruction of our citizens' faith in our electoral process." (Citations omitted; internal quotation marks omitted.) *Martin* v. *Secretary of State*, 280 Mich. App. 417, 437, 760 N.W.2d 726 (2008) (O'Connell, J., dissenting); see *Martin* v. *Secretary of State*, 482 Mich. 956, 755 N.W.2d 153 (2008) (Supreme Court adopting reasoning of Judge O'Connell's dissent on appeal).

[17] See Webster's Third New International Dictionary (1993) (defining "deem" as "to sit in judgment upon: decide . . . to come to view, judge or classify after some reflection: hold, think . . . to form or have an opinion: believe"); American Heritage Dictionary (1978) (defining "deem" as "to judge, consider . . . to have an opinion, suppose").

General Statutes chs. 141 through 158. A cursory review of these statutes suggests that the legislature generally does not use this term to set forth rebuttable presumptions.[18] Indeed, it is apparent that this term can indicate a conclusive presumption.[19] In the election laws, one statute expressly uses the phrase "shall be deemed" in setting forth "conclusive presumptions." See General Statutes § 9-150a (j).[20]

---

[18] See, e.g., General Statutes § 1-1d ("[e]xcept as otherwise provided by statute . . . the terms 'minor', 'infant' and 'infancy' shall be deemed to refer to a person under the age of eighteen years"); General Statutes (Sup. 2010) § 1-1m ("[w]herever in the general statutes or the public acts the term 'husband', 'wife', 'groom', 'bride', 'widower' or 'widow' is used, such term shall be deemed to include one party to a marriage between two persons of the same sex"); General Statutes § 4-176 (i) ("[i]f an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor, or within such longer period as may be agreed by the parties, the agency shall be deemed to have decided not to issue such ruling").

[19] See, e.g., General Statutes § 9-8 ("[a]ny person who makes a false statement in any statement required to be signed under the penalties of false statement under this title and, except as otherwise provided by law, any person who signs the name of another to any such statement shall be guilty of false statement, which shall be deemed to have been committed in the town where such statement is filed and shall be subject to the penalties provided for false statement"); General Statutes § 14-227b (a) ("[a]ny person who operates a motor vehicle in this state shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine and, if such person is a minor, such person's parent or parents or guardian shall also be deemed to have given their consent"); General Statutes § 46b-69b (b) ("[a] party shall be deemed to have satisfactorily completed such [parenting education] program upon certification by the service provider of the program").

[20] General Statutes § 9-150a (j) provides: "In the counting of absentee ballots the intent of the voter shall govern, provided the following *conclusive presumptions*, where applicable, shall prevail in determining such intent:

"(1) If the names of more candidates for an office than the voter is entitled to vote for are checked or validly written in, then the vote cast for that office *shall be deemed* an invalid overvote.

"(2) If the name of a candidate who has vacated his candidacy is checked such vote shall not be counted.

"(3) On an absentee ballot on which candidates' names are printed, a vote shall be deemed cast only for each candidate whose name is individually checked or validly written in, except as otherwise provided in this subsection. If a party designation is circled, checked, underscored or similarly marked in any manner, or written in, no vote *shall be deemed* cast or

Logically and linguistically, the plaintiff's construction does not pass muster. There is no rational basis to conclude that the certificate is any less competent evidence of the endorsement the day after the statutory deadline expires than the day before it expires. Linguistically, the use of the phrase "shall be deemed to have made no endorsement" in § 9-388 is consistent with the historical fact that the candidate was endorsed at the party's convention. See General Statutes § 9-372 (9) (setting forth statutory definition of party endorsed candidate); see also footnote 13 of this opinion. Application of § 9-388 cannot alter that historical fact; it can, however, change the defendant's ability to recognize, or give legal effect to, that fact. See Black's Law Dictionary (9th Ed. 2009) (defining "deem" as "[t]o treat [something] as if [1] it were really something else, or [2] it has qualities that it does not have").

To the extent that the plaintiff relies on Superior Court decisions in support of his interpretation, we also are not persuaded. We note that there were only two Superior Court decisions interpreting § 9-388 before the legislature amended the statute in 2006: *Ocif* v. *Tashjian*, Superior Court, judicial district of Litchfield, Docket No. 0053848 (August 8, 1990), and *Gasparino* v. *Bysiewicz*, Superior Court, judicial district of Hartford, Docket No. CV-04-4002077-S (September 13, 2004). As we previously noted, prior to the 2006 amendment, the statute provided that, in the event that the certificate was not received by the deadline, the party would be deemed to have made no endorsement, but the statute did not specify a method of mailing or provide that the certificate would be invalid. In both Superior Court cases, the trial court had ordered the Secretary of the State to place on the ballot the name of a candidate who had not timely filed a certificate of endorsement

cancelled for any candidate by virtue of such marking or writing." (Emphasis added.)

when there was clear evidence that the candidate had in fact been endorsed at the party convention and there was no undue burden in administering the election. The court in *Ocif* construed "shall be deemed" as creating an evidentiary presumption, whereas the court in *Gasparino* did not cite this language or *Ocif* and instead more generally concluded that the equities compelled such a result in the absence of clear language precluding such relief. Neither decision is officially published. Accordingly, the doctrine of legislative acquiescence, which rests on a presumption of legislative awareness of court decisions, is inapplicable. See *State* v. *Courchesne*, 296 Conn. 622, 717, 998 A.2d 1 (2010).

There is, however, evidence to suggest that the legislature may have been aware of these Superior Court decisions and may have amended the statute in 2006 to make clear its original intent in light of those decisions. The bill proposing, inter alia, the addition of the language invalidating the certificate, Raised Bill No. 69, entitled "An Act Concerning Polling Place Accessibility and Certification of Candidates," ultimately was incorporated by amendment into a larger election reform bill, Substitute House Bill No. 5064, that was enacted as P.A. 06-137. The raised bill, proposed seventeen months after *Gasparino* was decided, contained the following statement of purpose: "To make certain clarifications to election law procedures." Raised Bill No. 69, February 2006 Sess. Although this statement does not indicate why the committee had deemed clarification necessary, the defendant submitted the following written testimony to the government administration and elections committee considering the raised bill: "This bill reemphasizes the original intent of . . . § 9-388 by stating that failure to comply with certain election related deadlines is a 'fatal defect,' whereby any certificate filed after the deadlines shall be invalid. Certain judicial decisions have made it necessary to clarify the necessity of the

deadlines in the [Connecticut] election calendar." Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt.1, 2006 Sess., p. 83. Although the defendant did not identify these decisions by name, *Ocif* and *Gasparino* were the only decisions in which the issue of the deadline under § 9-388 had been at issue up to this period in time. We note that, because the defendant's testimony was not given orally, there was no acknowledgment or response by the committee members, and there were no comments regarding the invalidation of certificates during legislative debate on the final amended bill. Nonetheless, "testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to address by the legislation." (Internal quotation marks omitted.) *Matey* v. *Estate of Dember*, 256 Conn. 456, 484–85, 774 A.2d 113 (2001).

Although the plaintiff claims that the defendant's statement has marginal persuasive value, both parties claim that the 2006 amendment supports their relative positions. The plaintiff relies on the fact that the legislature neither changed the "shall be deemed" language in § 9-388 nor added clear language barring party endorsed candidates from being placed on the ballot as indicative of agreement with the Superior Court holdings.[21] The defendant relies on the addition of the language invalidating the certificate as clarifying that the *endorsement* is invalid if the certificate is delivered untimely. We conclude that the defendant's reading of the 2006 amendment is more persuasive. More importantly, we see no evidence in the legislative history to undermine the construction to which the text itself is most condu-

[21] We note that the legislature added the language that the party "shall be deemed to have made no endorsement" in 1981; Public Acts 1981, No. 81-447, § 7; but there is no legislative history addressing that language.

cive.[22] Indeed, because the court in *Gasparino* did not rely on the "shall be deemed" language and *Ocif*, in which the court did so rely, was decided sixteen years earlier, the legislature may not have considered a change to that language necessary. The fact that the legislature did not add language expressly barring the placement of a candidate's name on the ballot simply may reflect that it did not want to foreclose alternative methods of ballot access.

In sum, it is clear that the legislature has barred the defendant from accepting an untimely filed certificate of endorsement and similarly barred her from giving effect to the endorsement. The distinction drawn by the plaintiff between evidence of the endorsement and the endorsement itself, vis-á-vis the defendant's authority, is a distinction without a difference. The certificate is the endorsement for all intents and purposes. Because the legislature required strict compliance with

[22] The bill analysis for the sections of Substitute House Bill 5064 that incorporated Raised Bill No. 69 explains: "The bill invalidates a candidate's party endorsement, endorsement to run in a primary, or selection as a delegate to a convention if the certificate of endorsement or selection is not filed with the secretary of state or town clerk, as applicable, by the statutory deadline. Such endorsements or selections are already deemed not to have been made or certified." Office of Legislative Research, Amended Bill Analysis for Substitute House Bill No. 5064. As we previously have recognized, "the summaries prepared by the office of legislative research expressly provide: The following fiscal impact statement and bill analysis are prepared for the benefit of members of the General Assembly, solely for purposes of information, summarization and explanation and do not represent the intent of the General Assembly or either house thereof for any purpose. . . . Although the comments of the office of legislative research are not, in and of themselves, evidence of legislative intent, they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill. See, e.g., *State* v. *George J.*, 280 Conn. 551, 575, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007)." (Citations omitted; internal quotation marks omitted.) *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 124 n.15, 942 A.2d 396 (2008). We note that the analysis of the pertinent language is consistent with our interpretation of the text and offers no support for the plaintiff's contention that the certificate becomes invalid but the endorsement does not.

the deadline of § 9-388, the court cannot invoke its equitable authority to compel the defendant to act in direct contravention to this clear legislative mandate. Therefore, to the extent that the plaintiff relies on election cases holding that substantial compliance may satisfy a mandatory requirement, those cases are inapposite.[23]

We are mindful of the harsh consequence of application of strict compliance in the present case. The plaintiff, an incumbent probate judge, will not have an opportunity to seek election in the new probate district as the Democratic candidate, and it appears that the Republican candidate for probate judge for the thirty-second district will run unopposed in the general election. The effect on the plaintiff, his party and the voters is greater than it needed to be, however, because the plaintiff chose not to utilize other means of obtaining access to the ballot. See footnote 5 of this opinion. The court cannot intervene when the legislature clearly has expressed its intent to require strict compliance with the filing deadline under § 9-388. Any relief must come from the legislature.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[23] There are only two election cases in which this court has stated that a mandatory requirement of an election law could be satisfied by substantial compliance. In *Dombkowski* v. *Messier*, 164 Conn. 204, 206–208, 319 A.2d 373 (1972), the court deemed such a result would be proper when, unlike the present case, there was no adverse consequence specifically prescribed for noncompliance with the requirement at issue. In *Wrinn* v. *Dunleavy*, 186 Conn. 125, 147–50, 440 A.2d 261 (1982), the court acknowledged the substantial compliance standard, but in effect applied strict compliance by concluding that, because the absentee ballot had not been mailed by any of the enumerated persons authorized by statute to do so, the ballots could not be counted.